This is a workmen's compensation case.
In March 1989, Charles R. Kennedy, Jr., filed a complaint seeking temporary total disability, alleging that in May 1987, while employed as a maintenance man by The Guardian Companies (Guardian) at North field Village Apartments, he injured his back while lifting a refrigerator. Guardian acknowledged receiving notice of the injury but did not investigate the claim as it had terminated Kennedy's employment and workmen's compensation insurance shortly after the alleged injury occurred. Since Kennedy no longer carried medical insurance, he sought and received medical treatment from the Veteran's Administration (V.A.) Hospital in Biloxi, Mississippi.
In August 1989, Kennedy also filed a claim under 38 U.S.C. § 629 on behalf of the V.A. seeking the reasonable value of past and future medical care for treatment furnished to him. After an ore tenus proceeding, the trial court entered an order which states in pertinent part, the following:
 "1. That on May 18, 1987, plaintiff was employed by defendant, The Guardian Companies . . .
 "2. That on May 18, 1987, Plaintiff sustained an injury to his back, resulting from lifting a refrigerator, as a result of an injury by accident arising out of and in the course of his employment,
". . .
 "4. . . . Prior to the accident in question plaintiff had been in good health. . . .
 "5. That following the injury, plaintiff has not been paid temporary total disability benefits. The plaintiff is entitled to temporary total benefits . . . from the date of the accident . . . through the date of this Decree and a like sum weekly thereafter until plaintiff reaches maximum medical improvements.
 "6. That the Plaintiff has worked part time during the period of temporary total benefits and he has earned $10,442.02 which should be credited to Defendant from any award to plaintiff.
 "7. That plaintiff has not reached maximum medical recovery.
 "8. Defendant has not paid reasonable and necessary medical expenses incurred in the care and treatment of the plaintiff . . . which . . . shall be . . . granted . . . in an amount to be proven at a subsequent hearing. In addition, defendant shall pay all reasonable and necessary *Page 1055 
medical expenses which will likely be incurred in the future as a result of this accident."
Guardian appeals from this order, claiming that Kennedy did not have a compensable injury since he suffered from a preexisting back injury. Guardian also argues that Kennedy's witnesses were not credible, that the trial court erred in awarding temporary total disability benefits to Kennedy, and that the trial court committed reversible error by ruling inadmissible certain portions of Kennedy's military personnel records.
Kennedy cross-appeals the trial court's decision allowing a credit to Guardian for monies Kennedy earned subsequent to the injury.
At the outset, we note our limited scope of review in a workmen's compensation case. First, our duty is to make a determination of whether there is any legal evidence to support the trial court's findings. Once this determination is made, we must decide whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods,Inc., 575 So.2d 91 (Ala. 1991).
The record reveals that on May 18, 1987, Kennedy was working as a maintenance person for Guardian. Kennedy's supervisor, Tommy Walker, had arranged with a refrigerator repair man, Taylor, to repair several refrigerators at the apartment complex. Taylor told Walker that he would need some assistance loading the refrigerators. Kennedy was instructed to assist Taylor and he was not paid by Taylor for his services.
Taylor testified that between 10:30 and 11:00 a.m., Kennedy and he were moving the refrigerators onto a truck, when suddenly Kennedy dropped the refrigerator, turned, and complained of "a severe pain." Taylor and an apartment resident witnessed the injury. The resident testified that after Kennedy dropped the refrigerator, Kennedy complained of pain and departed. The resident then helped Taylor with the next load.
We find that the testimony from these eyewitnesses is sufficient to establish that the injury occurred while Kennedy was on the job with Guardian.
The next issue raised by Guardian is whether the injury was compensable under the Workmen's Compensation Act. Guardian alleges that Kennedy had a pre-existing back condition from his military service which precludes benefits in this case.
If an employee was able to perform his duties prior to the injury, no pre-existing condition is present for purposes of workmen's compensation. Canterbury Electric Company v. Price,555 So.2d 1064 (Ala.Civ.App. 1989), Furthermore, if a pre-existing condition is aggravated by a work-related injury, the condition is still compensable even though the accident may not have caused the same injury in another person. Blue BellInc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App. 1985).
The record reveals that Kennedy's attending physician was Dr. Gee, the Chief of Orthopedics at the V.A. in Biloxi. Kennedy underwent a CAT scan in August 1987 which revealed a herniated disc, and other tests were consistent with this finding. Dr. Gee testified that he recommended surgery and that, in his opinion, the injury was permanent. Dr. Gee also testified that he found nothing in Kennedy's military medical records to indicate a pre-existing problem with a herniated disc.
The evidence shows that Kennedy sought treatment from Dr. William Crotwell, also an orthopedic surgeon, in order to obtain a physical disability rating. Dr. Crotwell testified that tests revealed that Kennedy suffered from a lumbo-sacral strain with accompanying degenerative disc disease and a probable central herniation at the L-4, L-5 level. Dr. Crotwell indicated that Kennedy would be a good candidate for a "work hardening program" along with some physical therapy. Dr. Crotwell testified that Kennedy probably had some degenerative changes in his back (as a result of his prior military injury) which were aggravated when he received an acute injury or strain to his back while lifting the refrigerator. He further opined that the recent injury *Page 1056 
gave Kennedy an acute lumbosacral strain to the extent of five percent (5%) permanent partial disability.
Moreover, the record revealed testimony that Kennedy's physical condition, prior to the injury, was sufficient to allow Kennedy to work as a roofer following his military service and prior to his employment with Guardian. This evidence would support a trial court's conclusion that Kennedy did not suffer a pre-existing condition which would preclude him from recovering workmen's compensation benefits.
Next, Guardian alleges that Kennedy's witnesses were not credible because some of them were his friends. The weight of the evidence and the credibility of the witnesses are matters for the trial court to determine. Redi Roast Products, Inc. v.Burnham, 531 So.2d 664 (Ala.Civ.App. 1988). We will not disturb the trial court's discretion on this issue.
The next issue Guardian raises is whether an "open ended" award of temporary total disability benefits was appropriate. Guardian argues that it was error for the court to find that Kennedy had been totally disabled since May 18, 1987, due to Dr. Crotwell's testimony and in light of Kennedy's subsequent employment history.
Total disability does not mean absolute helplessness or entire physical disability. H.C. Moore Sons v. Middlebrooks,567 So.2d 1359 (Ala.Civ.App. 1990). Temporary total disability refers to the period of time that the employee is recuperating, whereas permanent partial disability is based on the medical condition after maximum improvement has been reached. Defense Ordinance Corp. v. England, 52 Ala. App. 565,295 So.2d 41.9 (Ala.Civ.App. 1974). The evidence reveals that since the injury, Kennedy has held four different jobs during the period of temporary total disability. Witnesses testified that the post-injury jobs in which Kennedy engaged accommodated his back injury, and that it appeared that Kennedy experienced physical limitations on these jobs.
The medical evidence reveals that Kennedy had not reached maximum medical improvement at the time of trial. It is the duty of the trial court to review the entire evidence, and it may utilize its own observations, in determining the extent of disability. Smith v. O'Neal Steel, Inc., 571 So.2d 1148
(Ala.Civ.App. 1990). An expert's opinion regarding the percent of disability is not binding upon the trial court. Blue Bell, supra. Further, a conversion of temporary total disability to permanent or permanent partial disability is appropriate after maximum medical recovery is reached. Ex parte DCH RegionalMedical Center, 571 So.2d 1162 (Ala.Civ.App. 1990). Accordingly, we find that a reasonable view of the evidence supports the trial court's award of temporary total disability benefits.
Guardian next argues that certain portions of Kennedy's military personnel files should have been allowed into evidence for impeachment purposes. Apparently, Kennedy's personnel files contained information concerning non-judicial punishment in the form of a rank reduction. While we recognize that convictions by court martial of crimes involving moral turpitude are admissible for impeachment purposes, Nelson v. State,35 Ala. App. 179, 44 So.2d 802 (1950), there is no evidence of a conviction presented in the instant case. Therefore, the trial court was correct in prohibiting the use of those records.
Kennedy's cross-appeal challenges as improper the credit allowed to Guardian for Kennedy's wages which he earned during his temporary total disability.
In Stebbins Engineering and Manufacturing Company v. White,457 So.2d 425 (Ala.Civ.App. 1984), this court held that if an employee returns to work and the work he performs causes him considerable pain and he is hampered by the injury, then the employer should not receive a credit for these wages earned. While the evidence in the instant case was sufficient to support a conclusion that Kennedy could not perform his former manual labor jobs, it was not sufficient to establish that he was in considerable pain or hampered from performing his post-injury jobs. Accordingly, Guardian was properly awarded a credit for these wages. *Page 1057 
Kennedy's motion for damages for a frivolous appeal filed pursuant to Rule 38, Alabama Rules of Appellate Procedure, is due to be denied.
Having considered all of the issues, this case is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.