In April 1995, Andrew McGhee, an employee of International Paper Company, suffered an injury to his left hand while feeding lumber into a feeder machine. He ultimately underwent surgery to that hand on September 14, 1995, to repair the damage caused by the accident. He sued for workers' compensation benefits that he claimed the company owed him as a result of that accident. During a bench trial, the parties made a number of stipulations, which the court incorporated into its final judgment. The sole issue that remained for the trial court to decide was the amount of temporary total disability benefits owed to McGhee.
Following a hearing during which the trial court heard oral arguments from the attorneys and considered stipulations, depositions and exhibits, but took no testimony, the trial court entered a judgment that provided in pertinent part:
 "The court finds that [McGhee] was released to work as tolerated by his treating physician, on October 17, 1995, and that subsequently [McGhee] sought treatment from Dr. Victoria Masear on November 16, 1995. The Court finds that Dr. Victoria Masear removed the plaintiff from work on November 16, 1995 until May 2, 1996, when she released [McGhee] to work without restrictions. The Court also finds that [McGhee] was due to receive 24 weeks of back temporary total disability benefits for the period of November 16, 1995, through May 2, 1996 . . . ."
McGhee appealed, challenging the trial court's award of temporary total disability benefits. He contends that the trial court erred in determining that his temporary total disability benefits terminated as of the date *Page 881 
on which Dr. Masear approved his return to work with no restrictions. He argues that he should have been awarded temporary total disability benefits through the date on which he reached maximum medical improvement. We agree.
The evidence presented to the trial court consisted of stipulations, depositions, and exhibits. The trial court heard no oral testimony; therefore, the ore tenus principle does not apply. Whitehead v. Hester, 512 So.2d 1297, 1299 (Ala. 1987). Accordingly, this court must review this issue de novo, by applying established legal principles to the evidence contained in the record on appeal. Id. Further, appellate review of pure legal issues in a workers' compensation case is without a presumption of correctness. Ala. Code 1975, § 25-5-81; Flesher v. Saginaw Div., General Motors Corp., 689 So.2d 113
(Ala.Civ.App. 1996).
"Temporary total disability refers to `the healing period during which an employee is recovering and unable to work.'" Ex parte Moncrief, 627 So.2d 385, 387 (Ala. 1993) (quoting Haywood v. Russell Corp., 611 So.2d 365, 367 (Ala.Civ.App. 1992)). "A determination of when maximum medical improvement is reached depends on the circumstances of each case." Pemco Aeroplex, Inc. v. Johnson, 634 So.2d 1018, 1020 (Ala.Civ.App. 1994).
The medical records submitted to the trial court reflect that Dr. Andrew Hilliard performed surgery on McGhee's hand on September 14, 1995, and released him to work "as tolerated" on October 17, 1995. McGhee testified in his deposition that he returned to work on October 18, 1995, and was assigned to his former job, operating the drop sorter. McGhee explained in his deposition that this job involved shifting heavy metal levers to stop the assembly line in the event of an obstruction. McGhee explained in his deposition that he performed this job for approximately four hours, until he realized that his hand was extremely swollen; that when he showed his swollen hand to his supervisors, they sent him home and referred him to a local clinic for treatment; that the doctor who treated McGhee at the clinic advised him to avoid putting any weight at all on his hand; that the doctor advised him to remain off work for a couple of days; and that after October 18, 1995, he never returned to work for International Paper. It is unclear from his testimony whether he was terminated by International Paper or whether he voluntarily resigned. McGhee testified that he worked for a soft drink company for approximately three months, from August 1996 until November 1996, earning a weekly wage of $312. His job with the soft drink company involved driving a truck and stocking vending machines at various stores and schools. McGhee explained that he resigned that job because his hand swelled when he lifted the boxes of drinks.
McGhee explained in his deposition testimony that in November 1995, he sought treatment of his hand from Dr. Victoria Masear, an orthopedic surgeon. Dr. Masear stated in her deposition that upon her initial examination of McGhee, she noted that he was suffering from pain in his hand and numbness in his thumb as a result of nerve damage. Dr. Masear concluded that these symptoms were secondary to the "crush injury" he had suffered in April 1995. She described McGhee as a "compliant patient" with an above-average tolerance for pain. She explained that she treated McGhee with a regimen of splints, therapy, and a TENS unit. Describing the circumstances under which she released McGhee on May 2, 1996, to return to work, Dr. Masear testified in her deposition as follows:
 "Well, I told him that he would not have any dexterity in the hand. I didn't actually place any restrictions on him. Andrew told me that he needed to go back to work financially and asked me to release him. So I told him I would release him without restrictions but that he would not be able to do heavy lifting; that he wouldn't do any harm to his hand but it just might make it hurt. But he also did not have the dexterity in the hand and he needed to find a job that would fit within those limitations."
 Further, in a letter Dr. Masear wrote to McGhee's attorney on June 21, 1996, she stated: *Page 882 
 "I did not release him to work until May 2, 1996. I released him at that time because Andrew informed me that he had to work. I have instructed him that he is unable to do any lifting with his left hand because he does not have the strength in it. He is trying to find a job that will allow him to use primarily his right hand and use the left hand as a helper hand. He is to return to see me in July and by that time we can figure his impairment rating and he should have reached maximum medical improvement."
Dr. Masear further testified in her deposition that when she examined McGhee in her office on June 27, 1996, she found that his recovery of range of motion in his hand had "plateaued" and that "his nerve was not showing any further signs of recovery." Dr. Masear explained that she discharged McGhee on that date because she believed "he had got as much recovery as he was going to get." Dr. Masear testified in her deposition that she believed McGhee had reached his "maximum medical improvement" (MMI), on June 27, 1996.
International Paper Company presented no medical testimony or other testimony to refute Dr. Masear's deposition testimony indicating that McGhee's MMI was reached on June 27, 1996. Further the former employer makes no claim that it should be credited with any amounts McGhee may have earned after he was released to work. See, e.g., Guardian Companies v. Kennedy,603 So.2d 1053 (Ala.Civ.App. 1992), and Stebbins Engineering Mfg. Co. v. White, 457 So.2d 425 (Ala.Civ.App. 1984). International Paper argues simply that temporary total disability payments should be awarded only during the healing period while the employee is unable to work. In support of its contention, it cites Patterson v. Clark County Motors, Inc., 551 So.2d 412 (Ala.Civ.App. 1989), and TG Y Stores Co. v. Higdon, 437 So.2d 1035
(Ala.Civ.App. 1983). We do not interpret those cases as holding that temporary total disability benefits must be terminated on the date on which the employee is released to return to work. As a matter of fact, the court in TG Y Stores Co., one of the cases cited by International Paper, stated, "It is clear that an employee can return to work before maximum medical recovery is attained without having temporary total disability benefits terminated." 437 So.2d at 1036.
The evidence in the record indicates that after his surgery on September 14, 1995, McGhee was released by Dr. Hilliard on October 17, 1995, to work without restrictions, "as tolerated." No testimony of Dr. Hilliard appears in the record. The medical records pertaining to Dr. Hilliard's treatment of McGhee appear as exhibits in the record. Dr. Masear testified in deposition that she found Dr. Hilliard's return-to-work order ambiguous. She explained that the term "as tolerated" in a medical order means that "a patient should do what he feels he is able to do" and releasing a patient for regular duties, i.e., "without restrictions," means "you do what your work requires you to do." When he returned to work on October 18, 1995, McGhee was unable to perform his assigned duties, because of swelling in his hand. After he had found another job as a delivery man for a soft drink company and worked at it for a while, he was forced to resign that job as well, because of problems with his hand.
Thereafter, on May 2, 1996, while he was under the treatment of Dr. Masear, McGhee persuaded her to release him to return to work, because of his financial concerns. Dr. Masear indicated in her letter to McGhee's attorney that on May 2, 1996, she released McGhee to work without restrictions, both in order to allay McGhee's financial concerns and to allow him additional time to locate a job which he could perform with the special limitations necessitated by his hand injury. No evidence in the record indicates that McGhee located employment after he was released to work on May 2, 1996, and before June 27, 1996, the date Dr. Masear determined was the date of his MMI.
The determination of MMI rests on the facts and circumstances of the particular case. Johnson, 634 So.2d at 1020. In our review of the record, we found no evidence whatever to support the trial judge's finding that McGhee reached MMI on May 2, 1996. Dr. Masear testified that McGhee was a compliant patient and described him as a stoic *Page 883 
person and not a malingerer. Although Dr. Masear testified in her deposition that she released McGhee to work without restrictions, she explained in her testimony that she did so only at McGhee's insistence. She further testified that she cautioned McGhee on May 2, 1996, that a return to work at that time might cause him to experience pain.
The record indicates without dispute that McGhee reached MMI on June 27, 1996. Therefore, the trial court erred in failing to award temporary total disability benefits through that date. We therefore reverse the judgment of the trial court insofar as it establishes the award of temporary total disability benefits, and we remand this cause for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
Robertson, P.J., and Yates, Monroe, and Crawley, JJ., concur.