Charles W. Boley suffered an on-the-job injury while working for Holy Family Catholic School (hereinafter "the employer"). *Page 372 
Boley and the employer entered into a settlement agreement regarding Boley's claim for workers' compensation benefits. The settlement agreement provided, in pertinent part, that the employer would pay Boley $40,000 in settlement of all his claims arising out of the on-the-job injury, and that the employer would pay all Boley's reasonable and necessary medical expenses related to that injury. On July 20, 1992, the trial court entered a judgment that incorporated the terms of that settlement agreement.
On February 21, 2001, Boley filed a motion seeking to enforce the terms of the July 20, 1992, judgment. Boley asserted that the July 20, 1992, judgment, and § 25-5-77, Ala. Code 1975, as it read at the time of Boley's injury,[1] required the employer to maintain a charge account in its name at a pharmacy, required the employer to allow him to charge the cost of his prescription medication related to his on-the-job injury on the employer's account, and required the employer to pay the pharmacy directly for those charges. On June 19, 2001, the trial court granted Boley's motion and entered an order enforcing its July 20, 1992, judgment. On July 3, 2001, the employer filed a motion to amend the trial court's June 19, 2001, order. The trial court amended its order to reflect that this action was covered by § 25-5-77, Ala. Code 1975, as it read on August 8, 1990, the date Boley was injured. The employer appealed.
On August 8, 1990, Boley injured his back while working for the employer. As has previously been discussed, the trial court's July 20, 1992, judgment, required the employer to pay Boley $40,000 and the "reasonable and necessary medical expenses incurred, arising out of or connected with [Boley's] accident, disability or injury." Following the trial court's July 20, 1992, judgment, the employer[2] arranged for Boley to charge, at an authorized pharmacy, his prescription medication related to his on-the-job injury to an account in the employer's name. Between 1993 and 2001, the employer entered into agreements with several different pharmacies to provide an account in the employer's name so that Boley, as well as the employer's other workers' compensation claimants, could obtain prescription medication related to their on-the-job injuries. The record indicates that, pursuant to each of those agreements, the authorized pharmacy was to obtain the employer's approval before filling prescriptions related to the claimant's workers' compensation claim. In August 1999, the employer entered into an agreement with the Medicine Shoppe, a pharmacy, to service its charge account in Monroeville, Alabama; Boley lives near Monroeville.
The employer asserts that the Medicine Shoppe did not properly monitor the employer's account. The employer claims that the Medicine Shoppe notified the employer that it was unable to monitor the employer's account effectively and that it would no longer consent to monitoring the account. The record indicates that the employer was unable to locate a pharmacy that would agree to monitor the claimants' charges. The employer asserts that because of that and other difficulties in monitoring *Page 373 
the charges on its accounts, it adopted a new policy in August 1999 for handling its workers' compensation claims. The new policy applied to all of the employer's employees and workers' compensation claimants.
Under the new policy, the claimant would pay directly for all medications prescribed through the workers' compensation plan, and the employer would then reimburse the claimant. Upon receiving a receipt from a covered employee or a workers' compensation claimant, the employer's workers' compensation administrator would determine whether the claim was a covered expense and, if so, would then reimburse the employee or claimant on the Thursday following its receipt of the request. The new plan allowed the employee or claimant to select a pharmacy of his or her choice.
The record indicates that after the employer implemented its new policy, Boley requested that he be exempted from the new program and that he be allowed to continue to charge his approved prescription medications related to his on-the-job injury, as prescribed by his authorized physicians, on the employer's account at the Medicine Shoppe. The employer granted Boley's request, and it maintained its account at the Medicine Shoppe in Monroeville. The employer notified Boley that he was allowed to charge only medication prescribed by his authorized physicians and related to his on-the-job injury. The employer asserts that Boley misused the charge account and charged medications not related to his on-the-job injury to the account. Therefore, the employer states, it closed the account and notified Boley that he would have to pay for his prescriptions in advance and seek reimbursement pursuant to the employer's new policy.
Vicki Stricklin, the employer's workers' compensation claims administrator, testified by affidavit that the employer received bills from the Medicine Shoppe for items charged by Boley that were not related to his on-the-job injury. According to Stricklin, those items included birth-control pills, aspirin, bandages, and headache medication. The employer asserts that those items were not related to Boley's on-the-job injury and that the employer never agreed to pay for those items.
Stricklin also testified that the only doctors approved to prescribe medication for Boley for his on-the-job injury were Dr. Edmund Dyas and Dr. David Walsh. According to Stricklin's affidavit, on June 26, 2000, the employer received a bill from the Medicine Shoppe for Prazosin, a blood-pressure medication, charged by Boley and prescribed by Dr. Kenneth Aquilino. On February 1, 2001, the employer received a bill from the Medicine Shoppe for medication charged by Boley and prescribed by Dr. Kevin Welsh. Boley does not dispute that he charged the costs of medication not related to his on-the-job injury to the employer's account at the Medicine Shoppe.
The trial court's June 19, 2001, order states, in pertinent part, that the employer, "shall designate a pharmacy in or near Monroeville, Alabama, for the purpose of providing medication to Boley for the treatment of his job-related injuries in accordance with § 25-5-77, Ala. Code 1975, as it read in 1990, and shall pay said pharmacy directly for the provision of said medications in accordance with said Act."
When the trial court receives ore tenus evidence in a workers' compensation action, its findings of fact based on that testimony are entitled to a presumption of correctness on appeal, and will not be disturbed on appeal absent a determination that those findings are unsupported by substantial evidence. § 25-5-81(e)(2), Ala. *Page 374 
Code 1975. However, when the trial court hears no oral testimony, and the evidence presented to the trial court consists of stipulations, depositions, and exhibits, the ore tenus rule does not apply. McGhee v.International Paper Co., 729 So.2d 880 (Ala.Civ.App. 1999). Further, pursuant to § 25-5-81(e)(1), Ala. Code 1975, this court's review of the trial court's judgment with respect to the undisputed facts and with regard to purely legal issues is afforded no presumption of correctness on appeal. § 25-5-81(e)(1), Ala. Code 1975; McGhee, supra. In this case, the trial court's June 19, 2001, order states that the trial court considered "the arguments of counsel . . . , . . . the testimony by affidavit of Boley and Vicki Stricklin, as well as the exhibits presented." Accordingly, our review of the trial court's judgment is de novo. See McGhee, supra.
The employer asserts on appeal, as it has throughout the course of this action, that the trial court erred in holding that § 25-5-77, Ala. Code 1975, as it read in 1990, required the employer to maintain a charge account at a pharmacy for Boley's benefit, and that the trial court's judgment is inequitable because of Boley's past abuse of the account. We agree with the employer's argument that the trial court's June 19, 2001, order is inequitable based on the particular facts of this case.
This court has long recognized that one
 "`who seek[s] equity must do equity,' and `one that comes into equity must come with clean hands.' Levine v. Levine, 262 Ala. 491, 494, 80 So.2d 235, 237
(1955). The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.' Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978)."
J M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala. 1999). The record indicates that the employer notified Boley on more than one occasion that he was only to use the employer's charge account at the Medicine Shoppe for medication prescribed by authorized physicians and related to his on-the-job injury. However, the record indicates that on more than one occasion Boley charged items, such as birth-control medication, blood-pressure medication, and bandages, on the employer's account at the Medicine Shoppe; those items were either prescribed by physicians not authorized by the employer or were not related to Boley's on-the-job injury. Boley does not dispute making those charges or that those charges were not related to his on-the-job injury.
In support of the trial court's June 19, 2001, order, Boley cites this court's decision in Kelley v. Shelby County Health Care Authorities,638 So.2d 898 (Ala.Civ.App. 1993). This court's decision in Kelley stands for the proposition that the employer is directly responsible for paying authorized medical expenses attributable to the employee's on-the-job injury. The employer does not dispute its responsibility for Boley's authorized medical expenses; rather, the employer disputes the manner in which it is required to bear that responsibility when Boley consistently charged medication unrelated to his on-the-job injury to the employer's account.
We conclude that regardless of whether § 25-5-77, Ala. Code 1975, required the employer to pay the pharmacy directly for Boley's covered prescription medication, Boley's abuse of the employer's charge account by attempting to have the employer pay for medication not related to his on-the-job injury necessitates a finding that Boley had "unclean hands" and that *Page 375 
Boley's assertion that the employer be required to maintain that account is "contrary to equity and good conscience." Basic principals of equity dictate that Boley be required to comply with the requirements of the employer's new policy. See Hayes, supra.
The judgment of the trial court is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
Yates, P.J., and Crawley and Pittman,, JJ., concur.
Murdock, J., concurs in the result.
[1] The parties agreed that the statute applicable to this action was § 25-5-77, Ala. Code 1975, as it read at the time of Boley's injury. Section 25-5-77, Ala. Code 1975, was amended in 1992 (see Act No. 92-537, Ala. Acts 1992), and, most recently, in 1993 (see Act No. 93-614, Ala. Acts 1993).
[2] The record indicates that, at the time of the July 20, 1992, judgment, the employer retained a third-party administrator to adjust its workers' compensation claims.