PER CURIAM.
Saad’s Healthcare Services, Inc. (“Saad’s”), appeals from a judgment of the Mobile Circuit Court finding Cynthia Me-inhardt to be permanently and totally disabled as a result of injuries she sustained in the line and scope of her employment as a home-health-care nurse. This is the second time that this case has been before this court. See Meinhardt v. SAAD’S Healthcare Servs., Inc., 952 So.2d 368 (Ala.Civ.App.2006)(“Meinhardt I ”). The following excerpts from our opinion in Me-inhardt I are relevant to this appeal:
“Cynthia Meinhardt sued her employer, [SAAD’S], seeking workers’ compensation benefits under the Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975 (‘the Act’), based on ‘severe physical and psychological’ injuries she sustained after being stabbed repeatedly while working in the fine and scope of her employment at SAAD’S. SAAD’S answered and admitted that Meinhardt had sustained injuries arising out of and in the course of her employment.
“Following an ore tenus proceeding, the trial court entered a judgment on August 23, 2004, finding that Meinhardt had suffered a permanent and total disability. However, the trial court declined to award Meinhardt permanent and total disability benefits based on its finding that Meinhardt had unreasonably refused to accept medical services, including both psychological and psychiatric care. In light of that finding, the trial court found that Meinhardt had sustained a 90% physical impairment to her body as a whole and that, as a result of her physical and psychological injuries, Meinhardt had a 90% vocational disability. The trial court determined that Meinhardt had reached maximum medical improvement (‘MMI’) with regard to her psychological injuries on Mayl, 2004....”
“We find the resolution of the following issue to be dispositive of Meinhardt’s appeal. Meinhardt asserts that § 25-5-57(a)(4)[, Ala.Code 1975,] provides for the compensation of employees who suffer from ‘permanent total disability’ and that, because one cannot be deemed permanently and totally disabled without first reaching MMI, the trial court’s determination that she had reached MMI on May 1, 2004, precludes the application of § 25-5-57(a)(4)d., Ala.Code 1975. We agree.
“Section 25-5-57(a)(4)d. defines ‘permanent total disability’ and provides that ‘[a]ny employee whose disability results from an injury or impairment and who shall have refused to undergo physical or vocational rehabilitation or to accept reasonable accommodation shall not be deemed permanently and totally disabled.’ In Clear Creek Transportation, Inc. v. Peebles, 911 So.2d 1059 (Ala.Civ.App.2004), this court held that the penalty provision found in § 25-5-57(a)(4)d. applies to ‘employees who, after having reached MMI, ... are incapable of engaging in gainful employment before undergoing any physical or vocational rehabilitation but who would have some *850 degree of capacity to engage in gainful employment if they were to undergo physical or vocational rehabilitation.’ 911 So.2d at 1064 (emphasis added). In so holding, this court explained:
“ ‘The last sentence of paragraph d. of § 25-5-57(a)(4) clearly applies only to those employees who are totally disabled. First, as noted, it is in that section of the statute entitled by the Legislature “Permanent Total Disability.” More significantly, the language used by the Legislature makes it clear that this sentence applies to totally disabled employees. Finally, the sanction imposed by this provision for an employee’s refusal to undergo rehabilitation is the disqualification of the employee from receiving iofai-dis-ability benefits. If the employee were not totally disabled in the first instance (that is, in the absence of rehabilitation) the only sanction levied by the statute would be no sanction at all.’
“Peebles, 911 So.2d at 1064-65.
“In its judgment, the trial court concluded, as a matter of law, that Mein-hardt was permanently and totally disabled. However, relying on § 25-5-57(a)(4)d., it declined to award permanent and total disability benefits because Meinhardt had failed to ‘mitigate her damages.’ The trial court found that Meinhardt had refused psychological treatment as of November 2002 and that Meinhardt had refused to attend any further psychiatric appointments with Dr. Hammond after March 2003. The trial court further found that Meinhardt had resumed psychiatric treatment with Dr. [William] Wilkerson in February 2004. However, the trial court found that Meinhardt had remained noncom-pliant with prescribed psychological treatment and that, according to Dr. Wilkerson, Meinhardt had not begun psychological therapy as of the date of trial.
“SAAD’S contends that Meinhardt’s alleged noncompliance with prescribed psychological treatment at the time of trial reveals that Meinhardt continued to refuse treatment, not only before she reached MMI, but also after she reached MMI. Although we recognize that a trial court’s findings on disputed evidence in a workers’ compensation case are conclusive, and although we are not allowed to reweigh the evidence before the trial court, this court is authorized to determine whether the trial court’s decision is supported by sufficient evidence. Ex parte Golden Poultry Co., 772 So.2d [1175, 1176-77 (Ala.2000) ]. The findings of the trial court will be reversed if they are not supported by substantial evidence. See § 25-5-81(e)(2), Ala.Code 1975 (‘In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’).
“After reviewing the record, including Dr. Wilkerson’s deposition testimony, we conclude that the record does not contain substantial evidence supporting the trial court’s finding that Meinhardt continued to refuse treatment after she reached MMI. In his deposition testimony, Dr. Wilkerson testified that he ‘thought [Meinhardt] needed to return to therapy.’ However, Dr. Wilkerson testified that he did not refer Meinhardt to a psychotherapist. Furthermore, during a June 10, 2004, appointment with Meinhardt, Dr. Wilkerson noted that, at that time, Meinhardt was seeing a psychologist. It is undisputed that Meinhardt attended all of her scheduled monthly appointments with Dr. Wilkerson after February 2004. Given the evidence presented at trial, we cannot agree with SAAD’S contention that Me- *851 inhardt failed to comply with prescribed psychological treatment after she reached MMI.
“The trial court determined from the evidence that Meinhardt had reached MMI for her mental condition on May 1, 2004, and it found that Meinhardt had refused treatment during a period of time before she had reached MMI, i.e., before she was entitled to any permanent benefits. This court recognized in Peebles that the penalty provision found in § 25-5-57(a)(4)d. applies to employees who have reached MMI and are thereafter deemed totally disabled. Therefore, we must reverse the judgment of the trial court insofar as it declined to award Meinhardt permanent and total disability benefits and remand this cause for the trial court to reconsider its judgment in a manner consistent with this opinion.”
Meinhardt I, 952 So.2d at 370-71, 375-76 (footnotes omitted). In Meinhardt I, this court did not address whether the penalty provision found in § 25-5-57(a)(4)d. applied to an employee’s refusal to undergo psychological or psychiatric treatment.
After this court released its opinion in Meinhardt I, the trial court set the case for review. Before the trial court reviewed the case on remand, Saad’s filed a motion on October 10, 2006, to set an evidentiary hearing or, in the alternative, for a ruling that Meinhardt was non-compliant with physical or vocational rehabilitation due to her alleged refusal of psychological and psychiatric treatment since March 24, 2005. On October 23, 2006, the trial court conducted a hearing to review the case on remand, and on October 31, 2006, it entered an amended order stating, in pertinent part, as follows:
“[T]he Court hereby VACATES and AMENDS its ‘Findings of Fact, Conclusions of Law, and Final Judgment’ entered on August [23], 2004, as follows:
“a. The Court finds that although Cynthia Meinhardt was non-compliant with her prescribed psychological and/or psychiatric treatment between March 2003 and May 1, 2004, Cynthia Mein-hardt was compliant with her prescribed treatment thereafter.
“b. The Court finds that, as a proximate result of the March 7, 2002, assault, Cynthia Meinhardt is Permanently and Totally Disabled from gainful employment within the meaning of § 25 — 5—57(a)(4) of [the Workers’ Compensation Act]. After giving due consideration to her age, education, work skills, physical disabilities and psychological disabilities, Cynthia Meinhardt cannot be successfully re-trained for any substantial gainful employment.
“c. The Court finds that [Mein-hardt’s] average weekly wage at the time of the injury was $417.76. The weekly benefit rate for disability benefits is $278.51.”
(Emphasis in original.) The trial court did not address Saad’s allegations that Mein-hardt had been noncompliant with treatment since March 2005 in its October 31, 2006, amended order.
On November 15, 2006, Saad’s filed a motion to alter, amend, or vacate the trial court’s October 31, 2006, amended order and/or a petition to alter, amend, or revise the amended order.[1] In its motion, Saad’s *852 argued that Meinhardt had stopped taking her antidepressant medication after March 24, 2005, and that Meinhardt was noncom-pliant with her treatment after having reached MMI. Based on what it alleged was Meinhardt’s failure to comply with treatment after March 24, 2005, Saad’s maintained that the penalty provision found in § 25-5-57(a)(4)d. applied to prevent Meinhardt from being found permanently and totally disabled.
On November 17, 2006, the trial court conducted an evidentiary hearing on Saad’s November 15, 2006, motion. At that hearing, Saad’s introduced the November 8, 2006, deposition testimony of Dr. Wilkerson, Meinhardt’s psychiatrist; a July 29, 2004, deposition of Dr. Wilkerson; and copies of Meinhardt’s medical records maintained by Dr. Wilkerson. The trial court did not receive ore tenus evidence at the November 17, 2006, hearing.
On December 7, 2006, the trial court entered an order denying the November 15, 2006, motion to alter, amend, or vacate and petition to alter, amend, or revise the amended order. In its order denying the motion, the trial court determined, as a matter of law, that the penalty provision found in § 25-5-57(a)(4)d. did not apply to Meinhardt because the psychiatric treatment Meinhardt allegedly refused did not constitute “physical or vocational rehabilitation” under that statute. The trial court also concluded that Saad’s did not demonstrate that Meinhardt’s alleged failure to comply with her psychiatric treatment was unreasonable and, therefore, that it warranted the suspension of her compensation benefits under § 25-5-77(b), Ala.Code 1975. The trial court also declined to alter, amend, or revise its award of permanent and total disability benefits pursuant to § 25-5-57(a)(4)b., based on evidence indicating that Meinhardt was unable to work because of her mental condition. Saad’s timely appealed.
Saad’s raises three issues on appeal. Saad’s first contends that the trial court erred by finding in favor of Meinhardt because, it argues, the undisputed evidence proved that Meinhardt had unreasonably refused medical treatment, physical rehabilitation, and vocational rehabilitation for a period of 18 months after she had reached MMI. Saad’s also contends that the trial court erred by finding in favor of Meinhardt because the noncompliance provisions found in § 25 — 5—57(a)(4)d., Ala. Code 1975, and § 25 — 5—77(b), Ala.Code 1975, precluded an award of permanent and total disability benefits. Finally, Saad’s contends that the doctrine of estop-pel prevents Meinhardt from asserting that her refusal of treatment does not now preclude an award of permanent and total disability benefits.
Before addressing the issues raised by Saad’s on appeal, we note that our standard of review in this case is dictated by the manner in which the evidence was presented to the trial court at the November 17, 2006, hearing. At that hearing, the trial court considered the arguments of counsel and documentary evidence. “[W]hen the trial court hears no oral testimony, and the evidence presented to the trial court consists of stipulations, depositions, and exhibits, the ore tenus rule does not apply.” Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App.2002)(citing McGhee v. International Paper Co., 729 So.2d 880 (Ala.Civ.App.1999)). Therefore, no presumption of correctness attaches to the trial *853 court’s judgment, and our review of the trial court’s judgment is de novo. Id.; American Res. Ins. Co. v. H & H Stephens Constr., Inc., 939 So.2d 868, 872-78 (Ala.2006).
The November 8, 2006, deposition testimony of Dr. Wilkerson and the medical records submitted as exhibits to the deposition revealed the following pertinent facts. In February 2004, Dr. Wilkerson diagnosed Meinhardt with post-traumatic stress disorder (“PTSD”) and major depression. At that time, Dr. Wilkerson recommended that Meinhardt continue psychiatric treatment and take antipsychotic medication. Dr. Wilkerson treated Mein-hardt until March 2005. At the March 2005 appointment, Dr. Wilkerson noted that Meinhardt’s symptoms were “about the same.” According to Dr. Wilkerson, he had instructed Meinhardt to return to the clinic following her March 2005 appointment but Meinhardt failed to return for treatment. Dr. Wilkerson testified that he did not see Meinhardt again for treatment until October 2006.
Dr. Wilkerson testified that when Mein-hardt returned in October 2006 he asked her why she had not been to see him in 18 months and that Meinhardt stated that “she did not like to take medication.” Dr. Wilkerson documented in handwritten notes taken during the October 2006 appointment that Meinhardt expressed a desire to apply for disability benefits. Dr. Wilkerson stated that he believed that Me-inhardt had become discouraged with her treatment. Dr. Wilkerson testified that Meinhardt’s seclusion in her home and the anxiety caused by having to leave her home could have also been factors in her failure to participate in treatment for 18 months. According to Dr. Wilkerson, it is extremely common for patients to stop seeing a doctor only to return weeks or months later when they need to come back for treatment. Dr. Wilkerson explained that patients with PTSD sometimes avoid therapy and treatment sessions because they do not want to discuss the traumatic event that led to their PTSD. Dr. Wilkerson further explained that it was common for patients to discontinue use of their antipsychotic medication when they felt like their condition had improved. According to Dr. Wilkerson, patients with depression often feel hopeless and have the view that, no matter what they do, their condition is never going to improve and, therefore, discontinue their treatment on that basis.
Dr. Wilkerson testified that breaks in the treatment of PTSD and depression may make the treatment for those illnesses more difficult. He explained that the treatment of PTSD and depression is “not directed at [Meinhardt’s] physical problems.” Instead, Dr. Wilkerson stated, the treatment is directed “at her emotional response to what happened to her [and] her response to her injuries and to her pain.”
Dr. Wilkerson testified that, to his knowledge, Meinhardt had never expressly refused treatment. Dr. Wilkerson explained that his treatment plan for Mein-hardt consists of resuming her medication and therapy. Dr. Wilkerson testified that Meinhardt was unable to work and that he did not believe that Meinhardt was malingering.
On appeal, Saad’s contends that the penalty provision found in § 25-5-57(a)(4)d., AIa.Code 1975, of the Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala. Code 1975, precludes the trial court’s determination that Meinhardt is permanently and totally disabled because, it argues, Meinhardt failed to comply with her psychiatric treatment after she had reached MMI. Saad’s specifically contends that Me-inhardt’s 18-month abstention from psy *854 chiatric treatment after she had reached MMI demonstrated a refusal on her part of physical and vocational rehabilitation. Before we address whether Meinhardt’s 18-month abstention from psychiatric treatment constituted a refusal of rehabilitation, we must first decide whether the penalty provision found in § 25-5-57(a)(4)d. governs an employee’s refusal to continue psychiatric or psychological treatment.
Section 25-5-57(a)(4)d. defines “permanent and total disability” and provides that “[a]ny employee whose disability results from an injury or impairment and who shall have refused to undergo physical or vocational rehabilitation or to accept reasonable accommodation shall not be deemed permanently and totally disabled.” (Emphasis added.) Saad’s argues that the undisputed evidence presented at the November 17, 2006, hearing established that the treatment of Meinhardt’s mental condition affected her physical condition and her ability to work, thus triggering the application of § 25 — 5—57(a)(4)d. We disagree.
In Trott v. Brinks, Inc., 972 So.2d 81 (Ala.2007), our supreme court discussed the general principals of statutory construction in the context of interpreting certain provisions of the Act, stating as follows:
“ ‘The fundamental principle of statutory construction is that words in a statute must be given their plain meaning.’ Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003). ‘When a court construes a statute, “[wjords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used, a court is bound to interpret that language to mean exactly what it says.” ’ Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001)(quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). Additionally, ‘ “[e]ourts must liberally construe the workers’ compensation law ‘to effectuate its beneficent purposes,’ although such a construction must be one that the language of the statute ‘fairly and reasonably’ supports.” ’ Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003)(quoting Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala.1985)).”
972 So.2d at 85. “If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). Our supreme court has explained that the role of the appellate courts “is not to displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it [the appellate court’s] role to assume the legislative prerogative to correct defective legislation or amend statutes.” Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1051 (Ala.1991). “When determining legislative intent from the language used in a statute, a court may explain the language but it may not detract from or add to the statute.... Courts may not improve a statute, but may only expound it.” Siegelman, 575 So.2d at 1045.
In accordance with those principles, we look to the plain language of § 25-5-57(a)(4)d. in order to determine if an employee’s refusal to undergo psychiatric treatment precludes a finding of permanent and total disability under § 25-5-57(a)(4)d. The Act does not provide a statutory definition of the terms “physical rehabilitation” or “vocational rehabilitation.” Merriam-Webster’s Collegiate Die- *855 tionary (11th ed.2003) defines “physical” as “of or relating to the body,” id. at 935, and defines “vocational” as “1: of, relating to, or concerned with a vocation 2: of, relating to, or undergoing training in a skill or trade to be pursued as a career,” id. at 1400. Thus, the ordinary meanings of “physical” and “vocational” do not include any reference to the treatment of a mental illness.
We find that the language used in § 25-5-57(a)(4)d. is plain and unambiguous. If the legislature had intended to include an employee’s refusal to undergo psychological or psychiatric treatment as a basis for preventing an employee from being found to be permanently and totally disabled, the legislature could have included that language in the statute. Although we recognize that an employee’s rehabilitation may include treatment for mental illness, the legislature chose to limit the penalty provision found in § 25-5-57(a)(4)d. to those employees who refuse physical and vocational rehabilitation. This court cannot go beyond the plain meaning of the statute and expand it to encompass a condition not specified by our legislature. Siegelman, supra. Because we conclude that § 25-5-57(a)(4)d. does not prevent a finding of permanent and total disability based on an employee’s refusal to continue psychiatric or psychological treatment, we cannot say that the trial court was precluded under § 25-5-57(a)(4)d. from finding Meinhardt permanently and totally disabled.
Saad’s further contends on appeal that the trial court erred by failing to find that Meinhardt’s alleged refusal to accept psychiatric treatment for 18 months warranted a loss of all compensation benefits received during that time pursuant to § 25-5-77(b), Ala.Code 1975. Saad’s argues that Meinhardt’s failure to attend medical appointments and her failure to take medication constitute a refusal of treatment and that her refusal to attend the appointments was unreasonable.
Section 25-5-77(b), Ala.Code 1975, provides, in pertinent part, as follows:
“If the injured employee refuses to comply with reasonable request for examination, or refuses to accept the medical service or physical rehabilitation, which the employer elects to furnish under this chapter, the employee’s right to compensation shall be suspended and no compensation shall be payable for the period of the refusal.”
It is well-settled that an injured employee receiving compensation benefits may refuse medical treatment without the suspension of benefits, if the refusal is deemed “reasonable.” Baptist Mem’l Hosp. v. Gaylor, 646 So.2d 93 (Ala.Civ.App.1994); Health Care Auth. of the City of Huntsville v. Henry, 600 So.2d 324 (Ala.Civ.App.1992); Wiley Sanders Truck Lines, Inc. v. McLain, 591 So.2d 527 (Ala.Civ.App.1991); and Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988).
“The question whether refusal of treatment should be a bar to compensation turns on a determination whether the refusal is reasonable. Reasonableness in turn resolves itself into a weighing of the probability of the treatment’s successfully reducing the disability by a significant amount, against the risk of treatment to the claimant.”
1 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law § 10.10[2] at 10-30 (1998).
Before we address whether Mein-hardt’s 18-month abstention from treatment was reasonable, we must first determine whether, based on the evidence presented at the November 17, 2006, hearing, Meinhardt’s failure to participate in psychiatric treatment for 18 months constituted a refusal of medical treat- *856 merit. As noted earlier, the ore tenus rule does not apply in this case and our review of the trial court’s judgment is de novo. See Holy Family Catholic School v. Boley, supra.
In his deposition testimony, Dr. Wilkerson testified that, at his March 2005 appointment with Meinhardt, he recommended that she return for treatment in approximately one month. Meinhardt did not indicate to Dr. Wilkerson at the March 2005 appointment that she refused to return for treatment. It is undisputed that Meinhardt failed to comply with Dr. Wilkerson’s recommendation to return for treatment and that she did not return for treatment for a period of 18 months. Dr. Wilkerson offered several explanations for Meinhardt’s failure to return for treatment. Of those explanations, the only explanation Meinhardt provided directly to Dr. Wilkerson was that she did not like to take medication. Dr. Wilkerson explained that symptoms of Meinhardt’s PTSD and depression could have also been a factor in Meinhardt’s decision to discontinue treatment.
Although Dr. Wilkerson testified that Meinhardt never told him or a member of his staff that she refused to come back for treatment, we do not interpret § 25-5-77(b) to require an employee to specifically state that he or she refuses treatment. An employee can demonstrate a refusal to undergo treatment by his or her inaction. Meinhardt failed to attend appointments with Dr. Wilkerson and failed to take anti-psychotic medication for 18 months. Given the particular facts of this case, we conclude that Meinhardt’s failure to return to Dr. Wilkerson for psychiatric treatment over the course of 18 months constituted a refusal of treatment.
We must now determine whether Meinhardt’s refusal of treatment was reasonable. This court has previously recognized that if there are credible reasons given for the refusal of medical treatment, then the refusal is considered reasonable. Wiley Sanders Truck Lines, Inc. v. McLain, supra. In the majority of cases in which this court has been called upon to decide whether a refusal of treatment was reasonable, surgery was the recommended course of treatment. See, e.g., Baptist Mem’l Hosp. v. Gaylor, 646 So.2d 93 (Ala.Civ.App.1994)(holding employee’s refusal to undergo surgery on herniated disk was unreasonable); Simpson v. Dallas Selma Cmty. Action Agency, 637 So.2d 1360 (Ala.Civ.App.1994) (affirming trial court’s judgment declining to award permanent and total disability benefits on the basis of employee’s unreasonable refusal to undergo surgery on left hand); and Flame Refractories, Inc. v. Cole, 539 So.2d 1062 (Ala.Civ.App.1988)(holding employee’s refusal to undergo knee surgery was reasonable). In this case, we are asked for the first time to decide whether a refusal of psychiatric treatment was reasonable.
Dr. Wilkerson’s deposition testimony revealed that the only reason given by Mein-hardt for her failure to participate in psychiatric treatment when she returned from an 18-month absence was the fact that she did not like to take medication. Dr. Wilkerson presented additional reasons that could have contributed to Meinhardt’s failure to participate in treatment, but none of the reasons given by Dr. Wilkerson were based on any physical risk to Meinhardt that could result from psychiatric treatment. The psychiatric treatment offered by Saad’s was reasonably calculated to improve Meinhardt’s condition. Although we recognize the unique circumstances of treating a patient who suffers from a mental illness and are sympathetic to the challenges a patient with a mental illness faces while undergoing treatment, the length of time Meinhardt failed to comply with rec *857 ommended treatment, coupled with the lack of risk associated with the treatment, supports a conclusion that Meinhardt unreasonably refused medical treatment. Therefore, pursuant to § 25-5-77(b), Me-inhardt’s compensation benefits were due to be suspended during the 18-month period that she refused treatment. The trial court’s judgment is reversed insofar as it failed to find that Meinhardt unreasonably refused medical treatment and that her refusal necessitated a loss of all compensation benefits during the period of refusal pursuant to § 25-5-77(b).
Saad’s also contends that Meinhardt should be judicially estopped from arguing that her post-MMI refusal of treatment does not now preclude a finding of permanent and total disability. In support of its contention, Saad’s quotes a portion of an argument purportedly made by Meinhardt in her brief in opposition to a petition for a writ of certiorari to our supreme court in which Saad’s requested the review of this court’s decision in Meinhardt I. We note that neither the petition for certiorari to the supreme court nor the brief in opposition to the petition were included in the record before us on appeal, and Saad’s does not seek to supplement the record pursuant to Rule 10(f), Ala. R.App. P. It is beyond this court’s authority to take judicial notice of another court’s records. See Warren v. Wester, 827 So.2d 116, 119 n. 8 (Ala.Civ.App.2002)(recognizing that this court is not generally permitted to take judicial notice of the records of another judicial body); Worthington v. Amerson, 741 So.2d 437, 438 n. 2 (Ala.Civ.App.1999)(stating that “[generally, a court may not take judicial notice of the records of another court”). Furthermore, Saad’s cites to no authority in support of this argument on appeal. See McLemore v. Fleming, 604 So.2d 353 (Ala.1992)(recognizing that it is not the function of an appellate court to conduct an appellant’s legal research). Saad’s has not demonstrated error; therefore, we affirm as to this issue.
In its reply brief, Saad’s argues for the first time that the trial court’s determination in its December 7, 2006, judgment that Meinhardt did not refuse physical or vocational rehabilitation is barred by the doctrine of the law of the case. Saad’s maintains that the trial court’s earlier, August 23, 2004, judgment recognizing that Meinhardt’s psychiatric treatment constituted physical rehabilitation under the Act became the law of the case. It is a well-settled principle of appellate review that we will not consider an issue not raised in an appellant’s initial brief, but raised for the first time in its reply brief. Kyser v. Harrison, 908 So.2d 914 (Ala.2005); Birmingham Bd. of Educ. v. Boyd, 877 So.2d 592 (Ala.2003); Sanders v. Smitherman, 776 So.2d 68, 73 (Ala.2000); and C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d 1232, 1232 (Ala.1992). Because Saad’s raised the issue of the application of the doctrine of the law of the case for the first time in its reply brief, Meinhardt has not had the opportunity to respond. Therefore, we do not reach the question whether the trial court’s determination that Meinhardt did not refuse physical or vocational rehabilitation is barred by the doctrine of the law of the case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS, J., concurs specially, with writing.
MOORE, J., concurs in part and dissents in part, with writing.
BRYAN, J., concurs in the result in part and dissents in part, with writing.

. Section 25-5-57(a)(4)b., Ala.Code 1975, provides:
"At any time, the employer may petition the court that awarded or approved compensation for permanent total disability to alter, amend, or revise the award or approval of the compensation on the ground that as a result of physical or vocational rehabilitation, or otherwise, the disability from which the employee suffers is no longer a perma *852 nent total disability and, if the court is so satisfied after a hearing, it shall alter, amend, or revise the award accordingly.”