STATE OF CONNECTICUT *v.* ALBERT F. FEDERICI

COTTER, C. J., LOISELLE, LONGO, SPEZIALE and PETERS, Js.

Argued June 7—decision released September 4, 1979

*Francis T. Mandanici,* special public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* chief appellate counsel, with whom, on the brief, were *Austin J. McGuigan,* chief state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

SPEZIALE, J. After a trial to the court, the defendant Albert F. Federici was found guilty of the crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). The defendant has appealed from the judgment rendered.

Of the claims of error raised by the defendant, the following are dispositive of this case and involve the trial court's denials of the defendant's motions: (1) to suppress certain evidence introduced at trial which, he claimed, was seized without a warrant in violation of the fourth, fifth, sixth and fourteenth amendments to the United States constitution and of article first, §§ 7, 8 and 9 of the Connecticut constitution; and (2) to dismiss the charge against him because, he claimed, his warrantless arrest was not based on probable cause in violation of the fourth, fifth, sixth and fourteenth amendments to the United States constitution; and of article first, §§ 7, 8 and 9 of the Connecticut constitution, and of General Statutes § 6-49, now codified at General Statutes § 54-1f (Rev. to 1979).

The trial court's finding, which may stand without correction,[1] reveals the following sequence of events relevant to the dispositive issues: On the evening

[1] The defendant's assignment of errors presented an attack on the finding which raised some factual issues relevant to the dispositive claims, but none was pursued on appeal. They are therefore deemed to be abandoned. *State* v. *Lockman,* 169 Conn. 116, 121, 362 A.2d 920, cert. denied, 423 U.S. 991, 96 S. Ct. 403, 46 L. Ed. 2d 309 (1975); *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972).

of September 27, 1976, at about 9 p.m., a robbery
occurred at a Wawa Food Store on the Post Road
in Milford. Sharon Whitford and Edith Kopp were
employees at the store on that night and saw the
two men who allegedly committed the robbery.
Shortly after the robbers left with the money Mrs.
Whitford had given them from the cash register,
she called the police to report the robbery. The
police then issued a broadcast to patrolling officers
in which a description was given of the robbers and
their car.

The description was broadcast shortly after 9
p.m. and included the following data: An armed
robbery had just occurred at the Wawa Food Store
on the Post Road in Milford; a 1965 or 1966 gray
Chevrolet was the suspect escape vehicle; two white
males wearing large overcoat-type garments were
involved; and a shotgun had been displayed during
the robbery. This information was drawn from the
report called in by the two witnesses immediately
after the robbery. They had stated that, a short
time prior to the robbery, they had seen a car parked
"suspiciously" in the parking lot in front of the
store, and believed that the vehicle was a 1965 or
1966 gray Chevrolet. The witnesses also described
the two robbers.[2]

Officer William Graham, who was patrolling on
the 6 p.m. to 2 a.m. shift for the Milford police
department on the night of the robbery, received
the broadcast concerning the crime's occurrence at
about 9:12 p.m. Within two or three minutes of

---

[2] The two witnesses gave more detailed descriptions at some point,
but the facts transmitted by radio immediately after the report of
the robbery are as listed in the text, supra, and are all that are
necessary for the purposes of this opinion.

receiving the broadcast, Graham spotted a vehicle that fit the description given. The car was at the intersection of New Haven Avenue and Gulf Street in Milford, which is approximately 2.5 miles from the Wawa Food Store. Officer Graham proceeded to follow the suspect vehicle because he noticed that it fit the general description given in the broadcast. There was nothing unusual in the way the vehicle was being driven, but Graham noticed after following the car for a short while that the rear marker plate was missing. The court found that this further aroused his suspicions, because his training and experience as a police officer had indicated to him that the removal of license plates is a common method used by criminals to avoid detection when fleeing from the scene of a crime. At that point, approximately eight-tenths of a mile after he began following the automobile, Officer Graham decided to stop it. He contacted headquarters to advise it of his decision, and stopped the car in back of a bank on Broad Street.

As Officer Graham approached the stopped automobile, two occupants got out of the car. The defendant Federici left from the driver's side. The officer told the defendant that he had no rear marker plate, to which the defendant replied that the vehicle had a temporary registration and that the cardboard marker had fallen off. Officer Graham asked to see the registration, and the defendant went back into the vehicle and began to look for it in the glove compartment. While the defendant was looking in the glove compartment, the officer shined his flashlight into the rear seat of the vehicle, where he saw outerwear-type garments. He also noticed a temporary license plate on the floor of the car in back of the driver's seat.

At this point during the stop, a second police officer, Michael Skirkanich, arrived on the scene. Officer Graham told him to stay with the passenger from the car. Officer Graham then informed the defendant that he, his car, and his passenger fit the description broadcast concerning an incident, and he requested the defendant to place his hands on the roof of the vehicle. The court also found, however, that the vehicle driven by the defendant was a brown 1966 Chevrolet, and that the two occupants were both white males, but that the passenger was a white male of Hispanic descent. As Officer Graham began to frisk the defendant, a third officer, Lester Lawrence, came on the scene. As Officer Graham was patting down the defendant, Officer Skirkanich was frisking the other suspect. Officer Graham asked the third officer to check under the garments on the rear seat for weapons, which he did. Officer Lawrence removed two rifle-type weapons from underneath the garments. The defendant and his passenger were told that they were under formal arrest when the weapons had been found in the defendant's vehicle. After the garments were removed from the vehicle, Officer Graham made a radio check with police headquarters to obtain a fuller description of the clothing worn by the robbers. He learned that the robbers had been wearing army-type garments, one of which had a private's insignia, an inverted "V," on the sleeves. After the defendant and his companion had been taken from the scene, the interior of the vehicle was searched. The police found eighty-five dollars underneath a floor mat.

The dispositive claims of error involve the validity of the search and seizure of the garments, weapons, and money in the defendant's car, and the validity

of the arrest of the defendant. It should be noted before addressing these claims that counsel for the defendant conceded at oral argument the propriety of the police's initial stop of his car prior to the search, seizure and arrest, and their right to detain and "frisk" him. See *Adams* v. *Williams,* 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) (validating stop on less than probable cause); *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ("stop and frisk" of person without probable cause justified where reasonable for police officer to fear that close range suspect is armed); *State* v. *Acklin,* 171 Conn. 105, 368 A.2d 212 (1976) (citing *Adams* and *Terry* with approval). Therefore, we do not treat the constitutional propriety of the police behavior that occurred prior to the searches and seizures and the arrest.

## I

The defendant claims that the court erred in denying his motion to suppress because the search of his car and the seizure of the garments, the weapons, and the money were conducted in violation of state and federal constitutional protections against warrantless searches and seizures. We agree. In invoking these protections, the defendant claims that the sequence of events leading up to the search and seizure of the items in his car did not present an exception to the rule that searches and seizures of private property must be conducted both on reasonable grounds *and* pursuant to a properly issued search warrant.

As recently summarized by the United States Supreme Court, the fourth amendment, applicable to the states through the fourteenth amendment (and, by analogy, our own constitutional provision,

article first, § 7), "protects the privacy and security of persons in two important ways. First, it guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' In addition, this Court has interpreted the amendment to include the requirement that normally searches of private property be performed pursuant to a search warrant issued in compliance with the warrant clause. See, e.g., *Mincey* v. *Arizona,* 437 U.S. 385, 390 [98 S. Ct. 2408, 57 L. Ed. 2d 290] (1978); *United States* v. *Chadwick,* 433 U.S. 1, 9 [97 S. Ct. 2476, 53 L. Ed. 2d 538] (1977); *United States* v. *United States District Court,* 407 U.S. 297, 317 [92 S. Ct. 2125, 32 L. Ed. 2d 752] (1972); *Katz* v. *United States,* 389 U.S. 347, 357 [88 S. Ct. 507, 19 L. Ed. 2d 576] (1967); *Agnello* v. *United States,* 269 U.S. 20, 33 [46 S. Ct. 4, 70 L. Ed. 145] (1925). In the ordinary case, therefore, a search of private property must be *both* reasonable *and* performed pursuant to a properly issued search warrant." (Emphasis added.) *Arkansas* v. *Sanders,* 442 U.S. 753, 757–58, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *Trupiano* v. *United States,* 334 U.S. 699, 705, 68 S. Ct. 1229, 92 L. Ed. 1663 (1948); *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

As to the search of the defendant's automobile and the seizure of the items therein, therefore, the police normally would be required to have reasonable grounds or probable cause[3] to search and seize

---

[3] Both federal and state interpretations of the requirement use the terms interchangeably. See *Arkansas* v. *Sanders,* 442 U.S. 753, 757–58, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *State* v. *Hoffler,* 174

the items *and* a warrant issued by a judicial magistrate.[4] A search and seizure conducted without fulfilling both of these requirements would be illegal and the fruits of the search would not be admissible as evidence at trial, under the exclusionary rule. *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *Weeks* v. *United States,* 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914); *State* v. *Acklin,* 171 Conn. 105, 110, 368 A.2d 212 (1976). Failure by a trial court to suppress such evidence would constitute reversible error.

Nonetheless, narrowly drawn and well-delineated exceptions to the warrant requirement have been allowed. *Arkansas* v. *Sanders,* supra; *State* v. *Tully,* 166 Conn. 126, 133–34, 348 A.2d 603 (1974). In those instances, the requirement of probable cause and a warrant is replaced by the requirement of probable cause and an allowed exception to the warrant requirement. *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, reh. denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94 (1970); *Carroll* v. *United States,* 267 U.S. 132, 156, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *State* v. *Krause,* 163 Conn. 76, 80, 301 A.2d 234 (1972); 1 LaFave, op. cit., p. 440. Nevertheless, circumstances permitting an exemption from the warrant requirement do not swallow

Conn. 452, 460, 389 A.2d 1257 (1978); *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972); 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) § 3.1 (a).

[4] The history and rationale underlying the constitutional requirement that a "neutral and detached magistrate" perform the function of analyzing the bases for and deciding whether to issue a warrant is articulated in *United States* v. *Chadwick,* 433 U.S. 1, 8, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *United States* v. *United States District Court,* 407 U.S. 297, 317, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972); *Johnson* v. *United States,* 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

the *preliminary* part of the rule necessitating probable cause. *Chambers* v. *Maroney,* supra, 51. The probable cause requirement presents a threshold question beyond which our analysis–and the actions of a police officer–cannot go, unless it is satisfied. Without probable cause no search and seizure, whether or not made pursuant to a warrant, can be valid.

There were three sets of items searched and seized in this case: the garments, the weapons, and the money. We hold that the threshold requirement of probable cause was not met in any of these searches and seizures, and therefore find it unnecessary to address the exceptions arguably applicable in automobile searches. See *State* v. *Tully,* supra, 134–35, and cases cited therein (listing some exceptions); *Arkansas* v. *Sanders,* supra (discussing *Carroll* v. *United States,* supra, 153, which originated the different treatment accorded searches of a home or office and searches of a vehicle, and subsequent cases).

The state has raised one nonautomobile exception to the warrant requirement which, if sustainable, would seem to obviate the need for inquiring into the level of probable cause. This exception allows the admission of evidence that has been seized pursuant to a search that was "incident" to a lawful arrest. *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, reh. denied, 396 U.S. 869, 90 S. Ct. 36, 24 L. Ed. 2d 124 (1969); *State* v. *Cari,* 163 Conn. 174, 186, 303 A.2d 7 (1972). A lawful arrest depends, however, on the same requirement as does a search by itself. Regardless of whether or not the search and seizure preceded the arrest, the inquiry still comes to focus on whether there was probable cause at the *time* of the *search.* That is,

whether we view the search and seizure as being chronologically prior to the arrest, as they certainly were, or as also being "contemporaneous" with it and an "integral part of a single incident"; see *State v. Cobuzzi,* 161 Conn. 371, 377–79, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972) ("[a] search may be incident to an arrest even though the search precedes the arrest if adequate grounds exist at the time of the search and both the arrest and the search are integral parts of a single incident," citing *Ker* v. *California,* 374 U.S. 23, 42–43, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963) and other cases); it is clear that probable cause must have existed at the time the police conducted their search in order for the search and seizure to pass constitutional muster.[5]

Therefore, the first inquiry in an appeal attacking the validity of a search and seizure is whether probable cause existed at the time the search and seizure occurred. We now address that inquiry to each of the searches and seizures raised as illegal conduct on this appeal.

## A

The overcoats were seized, as a matter of fact, after their observation by Officer Graham, not after a search. His view of them occurred as he shined a flashlight into the back of the car. Thus our

---

[5] Although the levels of probable cause to *arrest* and probable cause to *search and seize* have not explicitly been equated, "[i]t is generally assumed by the Supreme Court and the lower courts that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search." 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) § 3.1 (b), p. 441; see *Chambers* v. *Maroney,* 399 U.S. 42, 47, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Ker* v. *California,* 374 U.S. 23, 41–43, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); *Johnson* v. *United States,* 333 U.S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

inquiry on the seizure of these items must be made in the context of the "plain view doctrine" as articulated in *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). In that case, it was held that when a police officer comes upon evidence in open view,[6] that discovery is not a search at all. The question in such cases is not the legality of the search and seizure, but the validity of the *view* and seizure. *Coolidge* set forth a three-pronged test for plain view cases against which to measure the validity of plain view seizures, i.e.: (1) the police intrusion that leads up to the view must be legal; (2) the discovery of the evidence must be inadvertent; and (3) the police must have probable cause to believe there is a reasonable relation between the evidence seized and the criminal behavior under investigation. *Coolidge* v. *New Hampshire,* supra; *State* v. *Pepe,* 176 Conn. 75, 79–80, 405 A.2d 51 (1978); *State* v. *Krause,* 163 Conn. 76, 80–83, 301 A.2d 234 (1972); *State* v. *Cobuzzi,* 161 Conn. 371, 377, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972); 2 LaFave, op. cit. § 4.11(b).

---

[6] We note here that an appreciation of the distinction between the observation whereby a person, in most instances a police officer, sees an object in "open view," and the *doctrine* named "plain view" is crucial in this and similar cases. As explained by Professor LaFave, the *doctrine* comes into play only under certain circumstances; see infra; whereas the mere act of observing items left in *open* view does not necessarily invoke the *plain* view doctrine. 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) § 2.2(a). Therefore we consciously describe the pure act of observation as "open view," and denote the doctrine only with the term "plain view." See *State* v. *Allen,* 155 Conn. 385, 393–94, 232 A.2d 315 (1967).

We note also that the use of a flashlight does nothing to affect the propriety of the view. A flashlight merely provides at night what the sun does during the day. 1 LaFave, op. cit. § 2.2(b), pp. 248, 250, and cases cited.

First, the view itself in this case was valid, because the officer's presence was legal. He had reasonable suspicions to justify his stop of the car and his routine questions and observations. *Ker* v. *California,* supra, 43; *State* v. *Smith,* 157 Conn. 351, 355, 254 A.2d 447 (1969). Second, the discovery of the overcoats was inadvertent. Although the officer had the description broadcast by radio in mind, he saw the coats as anyone would by glancing in the back seat as he waited for the defendant to find his vehicle registration in the glove compartment.

As to the third prong of the *Coolidge* test, however, the description *then* available to the police was not detailed enough to provide probable cause to believe that the coats in the back of the defendant's car were reasonably related to the robbery of the Wawa Food Store. Probable cause is not susceptible of precise definition, but depends on the nature of each factual situation. *Wong Sun* v. *United States,* 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). There is some leeway allowed police officers, who daily confront ambiguous circumstances, and in order to do their duty will inevitably make mistakes. "But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar* v. *United States,* 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); see *State* v. *Cobuzzi,* supra, 376; 1 LaFave, op. cit. § 3.1, pp. 437–38. The overcoats seized by the police in this case were no more connected to the robbery than *any* overcoat was on that night; the radio broadcast[7] received by the officer

---

[7] Our cases have consistently approved police action whose probable cause was based on radio broadcasts or other "collective information." The fact that Graham's facts were drawn from that source rather than from his own investigation does not diminish their reliability.

described the suspects' attire only as "outerwear-type garments." No color, no length, and no distinguishing marks to specify the coats were provided the police before the seizure. As the United States Supreme Court so aptly emphasized in *Henry* v. *United States,* 361 U.S. 98, 104, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959), "[t]he fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband."

Nor can probable cause be established by what an officer discovers *after* the moment his intrusion occurs. See *Henry* v. *United States,* supra, 103; *Johnson* v. *United States,* 333 U.S. 10, 16–17, 68 S. Ct. 367, 92 L. Ed. 436 (1948). Thus the fuller description obtained by the officer's subsequent call to headquarters could not be used to support the seizure of the overcoats. The added detail of army-type garments, one with private's insignia on the sleeves, may or may not have brought the connection between the robbery and the coats up to the level of probable cause; but, what is certain is that the description as it stood *before* that information was supplied was far from sufficient to satisfy the third test in *Coolidge.* "It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause." 1 LaFave, op. cit. § 3.2 (d), pp. 465–66.

The motion to suppress as to the admission of the overcoats should have been granted.

*State* v. *Runkles,* 174 Conn. 405, 411, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978); *State* v. *Schoenbneelt,* 171 Conn. 119, 124, 368 A.2d 117 (1976).

## B

We next consider the seized weapons, which were found underneath the overcoats in the back seat. These items were not in open view, but were seized following a search. Therefore the *search* and seizure must have been based on probable cause to uphold the denial of the motion to suppress the admission of the guns.

The police were in possession of the following facts prior to their search of the defendant's automobile for evidence: A robbery had occurred less than half an hour before, about 3.3 miles from the place the car was stopped (the car was first spotted 2.5 miles from the store and followed eight-tenths of a mile further). The suspect car was a 1965 or 1966 gray Chevrolet. The suspects were described as two white males wearing large outerwear-type garments. A shotgun apparently had been displayed. The only other information available to the officer at the time of the search of the car and seizure of the weapons was his observation that the rear marker plate was missing.

Probable cause to search the defendant's car did not exist at that time. The description of the car was not matched–it was *brown*, not gray; the two perpetrators were described only by sex and race; and their overcoats were given no detail. Although the car was first observed a few miles from the scene of the crime a few minutes after the crime was reported, such a fact does not automatically place all persons and cars conforming to a vague description in a suspect light. The proximity in time and distance of suspects to a criminal occurrence does not alter the fact that some particularity of descrip-

tion in the police's knowledge must be matched by the suspect persons and/or vehicle. See 1 LaFave, op. cit. § 3.4 (c), pp. 608–18 (discussing sufficiency of information in victim/witness informant cases). Further, the missing rear marker plate did not *objectively* indicate a connection to the specific crime; its absence merely provided the reason for *stopping* the vehicle, not for *searching* it.

The motion to suppress as to the admission of the weapons also should have been granted.

## C

The money, eighty-five dollars, was seized after the defendant was taken in custody and removed from the scene. The police searched the car further and found the money under a floor mat. The only fact additional to those they had at the time they seized the weapons was the fuller detail concerning the overcoats. This did not add sufficiently to the information the police already had for probable cause to search and seize the money.

Nor can the search and seizure of the money be justified as a search incident to a lawful arrest. Even if the arrest had been lawful,[8] the search did not occur within the area of immediate control of the defendant, as required by *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); see *State* v. *Runkles,* 174 Conn. 405, 411–12, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978), 2 LaFave, op. cit. § 7.1 (b). The defendant was not even at the scene at the time the search was conducted.

The motion to suppress as to the admission of the money should have been granted.

---

[8] See Section II, infra.

## II

The defendant has also contended in his motion to dismiss that his arrest was illegal. We agree. The state has conceded, in its brief and at oral argument, and the court found that it was the seizure of the weapons that provided the evidence sufficient to form probable cause that the defendant had committed the robbery. See General Statutes § 54-1f;[9] *Wong Sun* v. *United States,* 371 U.S. 471, 481, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *Henry* v. *United States,* 361 U.S. 98, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959); *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972). We have held that the seizure of the weapons was illegal, supra. As "fruit of the poisonous tree," the arrest was tainted by the illegal search and seizure and cannot stand. *United States* v. *Ceccolini,* 435 U.S. 268, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978); *Johnson* v. *Louisiana,* 406 U.S. 356, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972); *Silverthorne Lumber Co., Inc.* v. *United States,* 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920). The information in the initial broadcast, the lack of a rear marker plate, and the additional

---

[9] General Statutes § 54-1f in relevant part reads: "Sec. 54-1f. (Formerly Sec. 6-49). . . . Sheriffs, deputy sheriffs, chief inspectors and inspectors in the division of criminal justice, constables, borough bailiffs, police officers, special protectors of fish and game and railroad and steamboat policemen, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others, and members of the division of state police within the department of public safety or of any local police department or any chief inspector or inspector in the division of criminal justice shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony. . . ."

details regarding the coats, obtained after the illegal seizures, did not provide enough information to qualify as an "independent source" that would justify the arrest. *Wong Sun* v. *United States,* supra, 487; 3 LaFave, op. cit. § 11.4 (a), p. 617. Nor can it possibly be argued that the arrest was attenuated from the tainting seizure. *United States* v. *Ceccolini,* supra; *Wong Sun* v. *United States,* supra; *Nardone* v. *United States,* 308 U.S. 338, 341, 60 S. Ct. 266, 84 L. Ed. 307 (1939). There was no probable cause to arrest the defendant.

The motion to dismiss the charge against the defendant should have been granted.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty.

In this opinion the other judges concurred.