992 So.2d 82 (2008)
STATE of Alabama
v.
Trevis GREEN.
CR-06-1871.
Court of Criminal Appeals of Alabama.
April 4, 2008.
Troy King, atty. gen., and Stephanie N. Morman, asst. atty. gen., for appellant.
Mary Bernice Sellers, Montgomery, for appellee.
PER CURIAM.
The State of Alabama appeals the circuit court's ruling granting Trevis Green's motion to suppress evidence seized from his vehicle as a result of an investigatory stop.
On May 12, 2006, at around 8:30 p.m. the police were called to a laundromat on *83 Woodley Road. There were several females at the laundromat, who spoke little English but who apparently told police that three or four black males had entered the laundromat, had held guns on them, and had demanded money. According to the females, when they did not understand what the men were saying the men began hitting them.
A be-on-the-lookout ("BOLO") was immediately broadcast to Montgomery police describing the suspects who had been involved in the robberies. According to the initial dispatch there were two suspects both black males. A second dispatch stated that there were four black males and a third dispatch stated there were three black males. The car the black males were driving was described as gray or dark gray and possibly heading south from the laundromat.
Within six minutes of hearing the BOLO, a Montgomery police officer, Officer A.D. Ferguson, saw a vehicle leave a gas station near the scene of the robberies. The officer stopped the vehicle, based on the BOLO, because it was the same color as the vehicle seen leaving the scene of the robberies and because the four individuals in the vehicle were of the same gender and race as the suspects described in the BOLO. As he was stopping the vehicle, Officer Ferguson saw a male later determined to be Green and a passenger lean over as though they were putting something between the seats. When conducting a search for weapons Officer Ferguson discovered a Crown Royal brand whiskey bag. The bag contained 68 grams of marijuana packaged for individual sale. The four men in Green's car were taken to the laundromat where the female victims remained. None of the men was identified as having been involved in the robberies.
In October 2006, Green was indicted for possession of marijuana in the first degree, a violation of § 13A-12-213, Ala.Code 1975. Before trial Green moved the circuit court to suppress the marijuana on the grounds that Officer Ferguson had stopped Green's vehicle without reasonable suspicion or probable cause. The circuit court granted Green's motion to suppress after briefs were filed on the issue by Green and the State. The State appealed pursuant to Rule 15.7, Ala.R.Crim.P.
On appeal, the State argues that the circuit court's ruling was erroneous because, it argues, Officer Ferguson had reasonable suspicion to stop Green's vehicle.
It is well established that a police officer may make a brief investigatory stop of an individual based upon a "reasonable suspicion" of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In R.W. v. State, 913 So.2d 505, 510-11 (Ala.Crim.App.2005), we stated the following concerning "reasonable suspicion":
"[R]easonable suspicion is determined not by looking at each circumstance individually, but by looking at the totality of the circumstances surrounding the incident. As explained by the United States Supreme Court:
"`When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. See, e.g., [United States v. Cortez, 449 U.S. 411] at 417-418 [(1981)]. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *84 Id., at 418. See also Ornelas v. United States, 517 U.S. 690, 699 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere "`hunch'" is insufficient to justify a stop, Terry [v. Ohio, 392 U.S. 1] at 27 [(1968)], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, [United States v.] Sokolow, [490 U.S. 1] at 7 [(1989)].
"`....
"`We think that the approach taken by the Court of Appeals here departs sharply from the teachings of these cases. The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase. The court appeared to believe that each observation by [the arresting officer] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." See [United States v. Arvizu,] 232 F.3d [1241] at 1249-1251 [(9th Cir.2000)]. Terry, however, precludes this sort of divide-and-conquer analysis. The officer in Terry observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent in itself," we held that, taken together, they "warranted further investigation." 392 U.S., at 22. See also Sokolow, supra, at 9 (holding that factors which by themselves were "quite consistent with innocent travel" collectively amounted to reasonable suspicion).'
"United States v. Arvizu, 534 U.S. 266, 273-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)."
The United States Supreme Court in United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), stated:
"The Fourth Amendment requires `some minimal level of objective justification' for making the stop. INS v. Delgado, 466 U.S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means `a fair probability that contraband or evidence of a crime will be found,' Illinois v. Gates, 462 U.S. 213, 238 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause, see United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544 (1985)."
When determining the validity of a stop of a vehicle based on police dispatches we consider the following:
"In reaching a well-founded suspicion to stop a vehicle pursuant to a BOLO, a police officer should consider several factors, including: 1) the length of time since the offense, 2) the distance from the offense, 3) the route of flight, 4) the specificity of the description of the vehicle and its occupants, and 5) the source of the BOLO information."
State v. Wise, 603 So.2d 61, 63 (Fla.Dist. Ct.App.1992). "The presence of three persons in the car, rather than two, is a discrepancy that might reasonably be explained in any number of ways and does not defeat the assessment that [the police officer] had reasonable grounds to investigate further." United States v. Hurst, 228 F.3d 751, 757 (6th Cir.2000).
*85 Here, it appears that the robbery occurred mere minutes before Officer Ferguson stopped Green's vehicle. The State asserts in its brief in opposition to Green's motion to suppress that Green's vehicle was stopped approximately 1.3 miles from the laundromat where the robberies occurred.[1] The dispatches identified the vehicle as a gray or dark gray car with two to four black males in the vehicle. Apparently the source of the dispatches was the victims' descriptions of the robbers to police.[2] Officer Ferguson stopped the vehicle approximately six minutes after the BOLO was issued.
Although probable cause did not exist to stop Green's vehicle, we hold that the facts were minimally sufficient, based on the totality-of-the-circumstances, to establish a reasonable suspicion for Officer Ferguson to stop Green's vehicle to investigate possible criminal activity.
Accordingly, the circuit court's order granting Green's motion to suppress the marijuana seized as a result of the investigatory stop is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
McMILLAN and WISE, JJ., concur.
BASCHAB, P.J., concurs in the result, with opinion.
SHAW, J., concurs in the result.
WELCH, J., dissents, with opinion.
BASCHAB, Presiding Judge, concurring in the result.
I agree with the conclusion in the main opinion that we should reverse the trial court's order granting the appellee's motion to dismiss and remand this case for further proceedings. However, for the reasons set forth herein, I do not believe that it is appropriate to address the merits of the motion to suppress at this time. Therefore, I respectfully concur in the result.
The appellee filed a motion to suppress on February 15, 2007, and a brief in support of his motion on March 7, 2007. In May 2007, the State filed a "State's Memorandum in Response to Defendant's Motion to Suppress Evidence." On July 13, 2007, the trial court entered an order stating:
"This Court, having reviewed the Defendant's Motion to Suppress and the State's response to Defendant's to Defendant's Motion to Suppress, hereby grants the Defendant's Motion to Suppress."
(C.R. 32.)
In this case, neither the appellee nor the prosecutor submitted any affidavits in support of their pleadings. Also, the record does not indicate that the parties entered into a stipulation of facts regarding the motion to suppress. Finally, the trial court did not conduct a hearing on the motion. Therefore, there was not any evidence before the trial court regarding the motion to suppress, and the trial court improperly granted the appellee's motion to suppress based on the unverified assertions *86 of defense counsel and the prosecutor.
Further, because the record does not include any evidence regarding the motion to suppress, it is not appropriate for this court to address the merits of the motion to suppress. To do so at this point puts this court in the position of making findings of fact regarding that motion. This is illustrated by the conflict in the evidence regarding the distance between the locations of the robbery and the stop. In the motion to suppress, the appellee asserted that the stop occurred four miles from the crime scene. However, the State asserted that the stop occurred 1.3 miles from the crime scene. To resolve this conflict, the main opinion takes judicial notice of Montgomery data maps to make a determination as to the actual distance involved.[3] Such a conflict would be better resolved by the trial court at a hearing.
In his dissent, Judge Welch notes that neither party objected to the trial court deciding the motion to suppress based on the pleadings and that neither party raises this issue on appeal. He cites Wilks v. Alexander, 638 So.2d 749 (Ala.1994), for the proposition "that when both parties agree to allow the trial court to enter a judgment based upon their separate statement of facts, even where the parties have not reached a joint stipulation of facts, the law allows such a judgment to stand." 992 So.2d at 87 (Welch, J., dissenting). However, the parties in this case did not specifically agree to allow the trial court to base its decision on their separate statements of fact. Therefore, the holding of Wilks does not apply in this case. Moreover, the record does not indicate that the parties had prior notice that the trial court intended to base its decision solely on the pleadings. Therefore, the fact that they did not object would not constitute a tacit agreement. Finally, this case illustrates the difficulty the State faces in cases in which it files a pretrial appeal. After the trial court entered its order denying the motion, the State had only seven days in which to file its notice of appeal. Therefore, the State was presented with the untenable choice of either filing a motion to reconsider raising this issue or filing a timely notice appeal. For these reasons, I do not believe that the fact that the parties did not present this issue to the trial court or on appeal cures the impropriety of the trial court denying the motion to suppress based solely on unverified pleadings.
For these reasons, we should remand this case to the trial court for that court to conduct further proceedings on the motion to suppress.
WELCH, Judge, dissenting.
Because I would affirm the trial court's order granting defendant Trevis Green's motion to suppress evidence seized from his car during an investigatory stop, I must respectfully dissent.
The record shows that Green was indicted for illegal possession of marijuana in the first degree, a violation of § 13A-12-213, Ala.Code 1975. Before trial, Green moved to suppress the marijuana found in his car on the ground that police stopped Green's car without reasonable suspicion or probable cause. There was no hearing on Green's motion. In its order, the trial court stated that its decision to suppress the evidence was based upon Green's motion and the State's response to that motion. It appears that neither party objected to the issue being decided without a *87 hearing. In addition, we note that on appeal neither party challenges the trial court's decision to decide the issue of whether to suppress the evidence without a hearing. The Alabama Supreme Court has held that when both parties agree to allow the trial court to enter a judgment based upon their separate statement of facts, even where the parties have not reached a joint stipulation of facts, the law allows such a judgment to stand. See Wilks v. Alexander, 638 So.2d 749 (Ala. 1994).
According to the brief filed in support of Green's motion and the State's response to the motion, a radio dispatch was broadcast to Montgomery police describing suspects who had been involved in a robbery at a laundromat on Woodley Road. According to the initial dispatch, there were two suspects, both black males, and they had fled in a car. A second dispatch stated that there were four black males in the car; a third dispatch stated that there were three black males. The car was described as gray or "possibly" dark gray. (C. 29.) The dispatch also said that the car "possibly" went south on Woodley Road.
Within six minutes of hearing the radio dispatch, a Montgomery police officer saw Green's car leave a gas station more than one mile from the scene of the robbery. (In its brief to the trial court, the State cited the distance from the robbery to the gas station as 1.3 miles. In Green's brief to the trial court, he cited the distance as four miles.)[4] The officer apparently stopped Green's vehicle because it was the same color as the vehicle seen leaving the scene of the robbery, and the four people in the vehicle were of the same gender and race as the suspects described in the dispatch. When the car stopped, the officer saw the driverGreenand a passenger both lean over as if they were putting something between the seats. In conducting an investigatory search of the car for weapons, the officer discovered a Crown Royal bag containing marijuana that appeared to be packaged for sale.
The four men in Green's car were taken to the scene of the robbery. None was identified as having any involvement in the robbery.
Because the trial court did not take oral testimony, the ore tenus rule does not apply. "[W]hen the trial court hears no oral testimony, and the evidence presented to the trial court consists of stipulations, depositions, and exhibits, the ore tenus rule does not apply." Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App.2002)(citing McGhee v. International Paper Co., 729 So.2d 880 (Ala. Civ.App.1999)). Therefore, no presumption of correctness attaches to the trial court's judgment, and this Court's review of the trial court's judgment is de novo. Id.; American Res. Ins. Co. v. H & H Stephens Constr., Inc., 939 So.2d 868, 872-73 (Ala.2006).
It is well established law that a police officer may make a brief investigatory stop *88 of an individual based upon a "reasonable suspicion" of criminal activity. State v. Murray, 733 So.2d 945, 950 (Ala.Crim.App. 1999).
"`"Reasonable suspicion is a less demanding standard than probable cause." Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). However, reasonable suspicion exists only if the officer has "specific, particularized, and articulable reasons indicating that the person [stopped] may be involved in criminal activity," Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr. App.1989). "To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,] must be considered." Arnold v. State, 601 So.2d 145, 149 (Ala.Cr.App. 1992) (emphasis added [in Washington]). Accord Lamar v. State, 578 So.2d 1382, 1385 (Ala.Cr.App.), cert. denied, 596 So.2d 659 (1991).'
"State v. Washington, 623 So.2d 392, 395-96 (Ala.Crim.App.1993)."
Peters v. State, 859 So.2d 451, 454 (Ala. Crim.App.2003).
In State v. Federici, 179 Conn. 46, 425 A.2d 916 (1979), the Connecticut Supreme Court considered a case similar to the instant case. In determining that the defendant's motion to suppress evidence was due to be granted, the Federici Court explained its rationale as follows:
"The police were in possession of the following facts prior to their search of the defendant's automobile for evidence: A robbery had occurred less than half an hour before, about 3.3 miles from the place the car was stopped (the car was first spotted 2.5 miles from the store and followed eight-tenths of a mile further). The suspect car was a 1965 or 1966 gray Chevrolet. The suspects were described as two white males wearing large outerwear-type garments. A shotgun apparently had been displayed. The only other information available to the officer at the time of the search of the car and seizure of the weapons was his observation that the rear marker plate was missing.
"Probable cause to search the defendant's car did not exist at that time. The description of the car was not matchedit was brown, not gray; the two perpetrators were described only by sex and race; and their overcoats were given no detail. Although the car was first observed a few miles from the scene of the crime a few minutes after the crime was reported, such a fact does not automatically place all persons and cars conforming to a vague description in a suspect light. The proximity in time and distance of suspects to a criminal occurrence does not alter the fact that some particularity of description in the police's knowledge must be matched by the suspect persons and/or vehicle. See 1 LaFave, [Search and Seizure: A Treatise on the Fourth Amendment (1978)] s 3.4(c), pp. 608-18 (discussing sufficiency of information in victim/witness informant cases). Further, the missing rear marker plate did not objectively indicate a connection to the specific crime; its absence merely provided the reason for stopping the vehicle, not for searching it."
Federici, 179 Conn. at 59-60, 425 A.2d at 923.
The State asserts that the facts in this case "strongly resembl[e]" (State's brief at p. 9) the facts in Harden v. State, 508 So.2d 1200 (Ala.Crim.App.1987), in which this Court found there was sufficient evidence to support the trial court's determination *89 that police had reasonable suspicion to stop the defendant's car for investigatory purposes.
In Harden the police officer who stopped the vehicle at issue was patrolling a five-block area near the site of a bank robbery when he heard the radio dispatch providing a description of the suspects. He said while patrolling the area, he saw a vehicle departing the driveway of a day-care center a block from the bank, "from which he had `never seen a car come out of' before." Id. at 1202. The officer said the vehicle was moving slowly, and the occupants were looking straight ahead and not conversing with each other. Additionally, "the vehicle was `the only one that was moving in that territory in or around the bank at that time.'" Id.
Harden is distinguishable from the instant case. Most importantly, the vehicle that police stopped in Harden was one block from the bank that was robbed, and it was the only car moving at the time. In this case, the car that police stopped was, at the least, more than a mile from the scene of the robbery. In Harden, the vehicle was seen coming out of a driveway that was seldom used. In this case, the police stopped a car that was seen leaving a gas station and pulling onto a four-lane highway. Additionally, we note that in this case, the description of the vehicle was vaguethe only description provided in the radio dispatch was that the car was gray or dark gray. No make, model, or year of the suspects' car was given, and the dispatch did not indicate whether the car was a two-door or four-door vehicle. As the radio dispatches were updated, the number of suspects in the car varied from two to four to three.
Because of the vague description of the car used by the suspects, and the fact that the distance between the scene of the robbery and the gas station where Green's car was first spotted as it left the station and pulled onto the Troy Highway was more than a mile, there was nothing particular that the officer knew about the suspects' car that matched Green's car.
I agree with the trial court that there simply was not sufficient evidence in this case that the police officer had a specific, particularized basis to support a "reasonable suspicion" that Green was involved in the robbery on Woodley Road. My de novo review of the evidence presented in the briefs the parties submitted to the trial court shows that law enforcement officials had a vague description of the suspects' car and its occupants, they had information indicating that the suspects left the scene of the robbery "possibly" headed south, and that Green was stopped more than a mile northeast of the scene of the robbery, and that only six minutes had elapsed between the first dispatch and the time the police officer first saw Green leaving at the gas station. Such evidence makes it unlikely that Green and his passengers would have been involved in the robbery. Police certainly did not have license to stop and search every gray or dark gray car, regardless of make or model, within a circumference radiating more than a mile from the scene of the robbery, in which two to four black men were riding.
Because I would have affirmed the judgment of the trial court, I must respectfully dissent.
NOTES
[1] A court may take judicial notice of distances. See Vulcan Materials Co. v. Grace, 274 Ala. 653, 151 So.2d 229 (1963). The distance between the robberies and the intersection where Green's vehicle was stopped is between two and three miles. See Metro Montgomery (Ala.) Data Maps, pp. 81 and 923 (1988-89). Also, the location where Green's vehicle was stopped is northeast of the location of the robberies.
[2] Information received from an anonymous informant is not as reliable. See State v. Dias, 284 Ga.App. 10, 642 S.E.2d 925 (2007).
[3] I question whether it is appropriate to take judicial notice of the distance involved in such a case.
[4] Rule 201(b), Ala. R. Evid., allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may take judicial notice without being requested to do so by the parties. In this case, the Court notes, just as the circuit was able to do, that the distance between the 3900 block of Woodley Road, where the robbery occurred, and the intersection of Virginia Loop Road and the Troy Highway, where Green's car was first seen, is between two to three miles, depending on the route taken. See, e.g., Metro Montgomery (Ala.) Data Maps, pp. 81 and 93. (1988-89). The Court also takes judicial notice of the fact that the intersection of Virginia Loop Road and the Troy Highway is northeast of the 3900 block of Woodley Road.