KELLUM, Judge.
 

 David Lamar Dudley, Jr., was arrested and charged with unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Ala.Code 1975. Dudley filed a pretrial motion to suppress the evidence seized from him by law-enforcement officials namely, a brown paper bag filled with smaller plastic bags containing a green, leafy substance later determined to be marijuana. Following an evidentiary hearing, the trial court granted Dudley’s motion to suppress.
 
 [1]
 
 Pursuant to Rule 15.7, Ala. R.Crim. P., the State appeals the trial court’s ruling.
 

 The following evidence was presented by the State at the suppression hearing. Officer Leroy Manigault, Jr., of the Montgomery Police Department was the only witness to testify at the suppression hearing. His testimony indicated the following: On November 11, 2008, Officer Mani-gault and Officer Livingston
 
 [2]
 
 received a dispatch informing them that a number of males were selling narcotics out of a blue Chevrolet Impala automobile near the intersection of Hill Street and the Mobile Highway in Montgomery. Officer Mani-gault initially testified that the dispatch informed the officers that there was an unknown number of suspects, but he later testified that the dispatch informed them that there were three black males selling narcotics from the Impala. As the officers were traveling eastward on the 1400 block of the Mobile Highway, the officers saw three black males sitting on a bench adjacent to an abandoned building. The officers parked their car and began walking toward the three men to conduct a field interview with them. As the officers got out of the car, Dudley stood up and began walking away. Office Manigault explained that Officer Livingston saw Dudley make some sort of movement with a brown paper bag. Officer Manigault testified that Dudley “threw” the bag as the officers approached him, but later said Officer Livingston saw Dudley “shove a brown paper bag behind [Dudley].” (R. 5, 6.) The officers detained Dudley and then retrieved
 
 *632
 
 the brown paper bag. Inside the bag the officers found 10 small plastic bags filled with a green, leafy substance later determined to be marijuana. At this point, the officers placed Dudley under arrest.
 

 Although Dudley contends the facts of the case are in dispute, the central inquiry of the suppression hearing was whether the facts of the case gave rise to a reasonable suspicion sufficient to allow the police to detain Dudley. The trial court pointedly questioned Officer Manigault about the initial dispatch and the officers’ observations that gave rise to their suspicion that criminal activity was afoot. The record indicates that the trial court did not dispute the underlying facts of the case, but rather disagreed with the contention that the facts, taken as a whole, lead to an inference of reasonable suspicion. In suppressing the evidence, the trial court stated:
 

 “THE COURT: So I mean, you haven’t even come in here under the guides of some of the caselaw to say that this is a high crime area, a lot of drug trafficking and all that. I don’t even have that much. Do I?
 

 “[The State]: No, sir.
 

 “THE COURT: Anything else?
 

 “[The State]: May I ask the officer—
 

 “THE COURT: No, sir. You closed out the evidence. We’re at argument now. I’ll grant the motion to suppress.”
 

 (R. 12.)
 

 The only issue before this Court is whether the trial court correctly applied the law to the facts presented at the suppression hearing. “ ‘This Court reviews de novo a [trial] court’s decision on a motion to suppress evidence when the facts are not in dispute.
 
 See State v. Hill,
 
 690 So.2d 1201, 1203 (Ala.1996);
 
 State v. Otwell,
 
 733 So.2d 950, 952 (Ala.Crim.App.1999).’ ”
 
 State v. Landrum,
 
 18 So.3d 424, 426 (Ala.Crim.App.2009), quoting
 
 State v. Skaggs,
 
 903 So.2d 180, 181 (Ala.Crim.App.2004). Accordingly, we afford the trial court’s ruling no presumption of correctness.
 

 In
 
 State v. Green,
 
 992 So.2d 82 (Ala.Crim.App.2008), this Court explained:
 

 “It is well established that a police officer may make a brief investigatory stop of an individual based upon a ‘reasonable suspicion’ of criminal activity.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 “In
 
 R.W. v. State,
 
 913 So.2d 505, 510-11 (Ala.Crim.App.2005), we stated the following concerning ‘reasonable suspicion’:
 

 “ ‘[Reasonable suspicion is determined not by looking at each circumstance individually, but by looking at the totality of the circumstances surrounding the incident. As explained by the United States Supreme Court:
 

 “ ‘ “When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the ‘totality of the circumstances’ of each case to see whether the detaining officer has a ‘particularized and objective basis’ for suspecting legal wrongdoing.
 
 See, e.g., [United States v. Cortez,
 
 449 U.S. 411] at 417-418 [(1981)]. This process allows officers to draw on then-own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’
 
 Id.,
 
 at 418.
 
 See also Ornelas v. United States,
 
 517 U.S. 690, 699 (1996) (reviewing court must give ‘due weight’ to factual inferences drawn by resident judges and local law enforcement officers). Although an officer’s reliance on a
 
 *633
 
 mere ‘ “hunch” ’ is insufficient to justify a stop,
 
 Terry [v. Ohio,
 
 392 U.S. 1] at 27 [(1968)], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard,
 
 [United States v.] Sokolow,
 
 [490 U.S. 1] at 7 [(1989)].
 

 [[Image here]]
 

 “ ‘ “We think that the approach taken by the Court of Appeals here departs sharply from the teachings of these cases. The court’s evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the ‘totality of the circumstances,’ as our cases have understood that phrase. The court appeared to believe that each observation by [the arresting officer] that was by itself readily susceptible to an innocent explanation was entitled to ‘no weight.’
 
 See [United States v. Ar
 
 vizu,] 232 F.3d [1241] at 1249-1251 [(9th Cir.2000)].
 
 Terry,
 
 however, precludes this sort of divide-and-conquer analysis. The officer in
 
 Terry
 
 observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was ‘perhaps innocent in itself,’ we held that, taken together, they Warranted further investigation.’ 392 U.S., at 22.
 
 See also Sokolow,
 
 supra, at 9 (holding that factors which by themselves were ‘quite consistent with innocent travel’ collectively amounted to reasonable suspicion).”
 

 “
 
 ‘United States v. Arvizu,
 
 534 U.S. 266, 273-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).’
 

 “The United States Supreme Court in
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), stated:
 

 “‘The Fourth Amendment requires “some minimal level of objective justification” for making the stop.
 
 INS v. Delgado,
 
 466 U.S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means “a fair probability that contraband or evidence of a crime will be found,”
 
 Illinois v. Gates,
 
 462 U.S. 213, 238 (1983), and the level of suspicion required for a
 
 Terry
 
 stop is obviously less demanding than that for probable cause,
 
 see United States v. Montoya de Hernandez,
 
 473 U.S. 531, 541, 544 (1985).’ ”
 

 992 So.2d at 83-84.
 

 Initially, we note that the trial court appears to have relied too heavily upon the facts surrounding the police dispatch and the officers’ identification of the suspects. Officer Manigault testified that Dudley and the other men they saw sitting on the bench adjacent to an abandoned building met the description of the men selling drugs out of a vehicle provided in the police dispatch. This evidence, standing alone, would not have given rise to sufficient reasonable suspicion to warrant a
 
 Terry
 
 stop. Nevertheless, the officers were alerted by the dispatch to drug activity in the area. However, taken in isolation, the information would not have provided sufficient reasonable suspicion for the officers to confront and detain Dudley.
 

 The trial court appears to have failed to give due weight to two other circumstances observed and articulated by Officer Manigault during the course of this investigation. First, Officer Manigault
 
 *634
 
 testified that Dudley stood up from the bench and began walking away from the officers when they parked the police car near where Dudley had been sitting. This Court has held that seeing a suspect begin walking in another direction upon seeing a police vehicle was conduct that could give rise to reasonable suspicion.
 
 See, e.g., Williams v. State,
 
 716 So.2d 753 (Ala.Crim.App.1998) (reasonable suspicion existed when police observed defendant in a high crime area and the defendant walked away from the police vehicle as soon as he saw the police presence);
 
 Ex parte James,
 
 797 So.2d 413, 417 (Ala.2000)(“Headlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.... ”). Additionally, one of the officers saw Dudley discard a brown paper bag as soon as Dudley saw the officers park the police vehicle near the bench where he was seated. This Court has previously held that police officers had probable cause to arrest a defendant upon seeing the defendant discard what was believed to have been a bag containing narcotics.
 
 See, Grubbs v. State,
 
 602 So.2d 498, 499 (Ala.Crim.App.1992) (“Probable cause arose in this case when the appellant threw the cocaine out the window. Based on this act, the officers were justified in concluding that an offense had been or was being committed.”). Thus, observing Dudley carry out similarly suspicious behavior would also give rise to a reasonable suspicion of criminal activity.
 

 The State has demonstrated some “ ‘ “minimal level of objective justification for making the stop” ’ ” of Dudley.
 
 Green,
 
 992 So.2d at 83-84, quoting
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting in turn
 
 INS v. Delgado,
 
 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). The knowledge that drug activity was occurring in the area, coupled with the officers’ watching Dudley see the police presence, get up from where he was seated, move in the opposite direction, and abandon a brown paper bag that was in his possession, constitutes sufficient justification to give rise to a reasonable suspicion of criminal activity. Accordingly, the trial court abused its discretion when it found that the police lacked sufficient reasonable suspicion to stop Dudley, and it erred in granting Dudley’s motion to suppress.
 

 Based on the foregoing, we reverse the order and remand this case for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 WISE, P.J., and WINDOM, J., concur.
 

 WELCH, and MAIN, JJ., concur in the result.
 

 [1]
 

 . The circuit court did not make any written findings of facts when it granted Dudley’s motion to suppress.
 

 [2]
 

 . Officer Livingston's first name was not included in the record.