PARKER, Justice
(dissenting).
I respectfully dissent from the main opinion. I would reverse the judgment of the Court of Civil Appeals because I read the phrase “vocational rehabilitation” in § 25-5-57(a)(4)d., Ala.Code 1975, a part of the Workers’ Compensation Act, in context to encompass mental-health services, including psychiatric services and psychological counseling.
I agree with Judge Moore, who concurred in part and dissented in part to the opinion in the Court of Civil Appeals:
“I respectfully dissent from that portion of the main opinion that upholds the *875 trial court’s award of permanent-total-disability benefits. I believe the clause ‘physical or vocational rehabilitation’ includes treatment for mental illness that is designed to improve an employee’s pain and to assist an employee to return to work. I further believe that the employee in the present case unreasonably refused ‘physical or vocational rehabilitation’ by failing to attend her counseling sessions and by failing to take her medication. Therefore, under § 25-5-57(a)(4)d., Ala.Code 1975, the employee should not have been deemed permanently and totally disabled.
“As pointed out by the main opinion, the term ‘physical or vocational rehabilitation’ is not defined in the Workers’ Compensation Act (‘the Act’), § 25-5-1 et seq., Ala.Code 1975. In determining the meaning of undefined terms in a statute, the overriding goal of this court is to ascertain and give effect to the legislature’s intent and purpose. See Ex parte Dunlop Tire Corp., 706 So.2d 729 (Ala.1997). The legislature specifically stated in § 1 of the 1992 act amending the workers’ compensation laws its intent that ‘The Alabama Workers’ Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes.’ Ala. Acts 1992, Act No. 92-537, § 1. Hence, in deciding the meaning of the term ‘physical or vocational rehabilitation,’ this court should determine the purpose for which that term is employed and liberally construe the term to assure that the legislative purpose is served.
“The legislature added the last sentence of § 25-5-57(a)(4)d. to the Act in 1992 as part of an overhaul of the workers’ compensation laws. See Ala. Acts 1992, Act No. 92-537, § 17. The legislature specifically and clearly explained its intent in rewriting the workers’ compensation laws in 1992:
“ ‘It is also the intent of the Legislature in adopting this workers’ compensation scheme to address difficulties in the current scheme that are producing a debilitating and adverse effect on the state’s ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen’s Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace has unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. There is a total absence of any reliable evidence that the current act has resulted in fewer injuries on the job, and a considerable body of evidence that any added benefit to the worker is significantly offset by the resulting reduction in job opportunities.’
“Ala. Acts 1992, Act No. 92-537, § 1. The legislature evidently concluded that awards of permanent-total-disability benefits to employees who refused to undergo physical or vocational rehabilitation unduly increased the costs of workers’ compensation. The legislature apparently reasoned that physical or vocational rehabilitation could either reduce or eliminate an employee’s loss of earning capacity, thereby reducing the compensation payable for an injury. Hence, an employee should undergo such rehabilitation. The prior workers’ compensation scheme did not suitably encourage an employee to fully participate in such rehabilitation, so the legislature enacted an inducement by declaring that an employee would not be eligible for permanent-total-disability benefits if the employee refuses to undergo physical or vocational rehabilitation.
*876 “In determining the purpose of certain language in a statute, a court should not simply view the words in isolation, but should consider the context in which the language is employed. See State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 813-14 (Ala.2005). Viewed in the proper context, the last sentence of § 25-5-57(a)(4)d. plainly is intended to encourage employees to undergo ‘physical or vocational rehabilitation’ that could lessen or eliminate their disability. See Clear Creek Transp., Inc. v. Peebles, 911 So.2d 1059, 1064 (Ala.Civ.App.2004). Hence, the phrase ‘physical or vocational rehabilitation,’ as used in § 25-5-57(a)(4)d., should be construed as any treatment, plan, or program that would decrease the physical disability resulting from an injury or reduce the loss of earning capacity caused by the injury.
“Such a construction would also be consistent with the meaning of the terms ‘physical rehabilitation’ and ‘vocational rehabilitation’ as they appear elsewhere in the Act. Section 25-5-77(a) requires employers to pay for reasonably necessary ‘physical rehabilitation.’ By construing that term to include any reasonably necessary treatment, plan, or program designed to decrease the physical disability caused by an injury, the court would assure that employees would receive the broadest relief available under the medical-benefits provision in the Act. Section 25-5-77(c), Ala. Code 1975, entitles an employee to ‘vocational rehabilitation’ when certain statutory conditions have been met. By construing the term ‘vocational rehabilitation’ to mean any treatment, plan, or program intended to lessen the loss of earning capacity caused by an injury, the court would assure that employees would receive the broadest relief available under the vocational-rehabilitation-benefits provision in the Act. This broad construction would meet the remedial purposes of the Act as the legislature intended. See Ala. Acts 1992, Act No. 92-537, § 1.
“In this case, Dr. [Jake] Epker stated that many of the employee’s physical symptoms ‘are likely due to anxiety ... [and] that her symptoms will improve through a combination of medication and therapy.’ Dr. [William] Wilkerson testified that depression increases the sensation and perception of pain and that depression actually alters the body’s immune response and healing ability. Although Dr. Wilkerson testified that his treatment was not ‘directed at [the employee’s] physical problems,’ the treatment obviously was intended to indirectly address the employee’s physical disability by decreasing the employee’s subjective pain. Thus, the treatment could be properly classified as ‘physical rehabilitation,’ as the trial court determined in its first judgment.
“The mental-health treatment provided to the employee could also be properly considered ‘vocational rehabilitation.’ The evidence is undisputed that the only barrier to the employee’s returning to work and earning the same amount of money as she did before the injury is her mental illness. Dr. Wilkerson basically testified that improvement in the employee’s mental condition would improve the employee’s ability to work. Consequently, treatment for her mental illness would lessen the employee’s loss of earning capacity, the goal of any vocational-rehabilitation plan.
“In Fruehauf Corp. v. Prater, 360 So.2d 999, 1001 (Ala.Civ.App.1978), this court held
“ ‘that if it is established by legal evidence that an employee has suffered a physical injury or trauma in the line and scope of his employment and he *877 develops a neurosis as a proximate result of such injury or trauma which neurosis causes or contributes to an occupational or physical disability, such disability is compensable.’
“(Emphasis added.) Pursuant to this test, disability caused by a mental illness is covered by the workers’ compensation laws only to the extent that the mental illness causes or contributes to a vocational or physical disability. It naturally follows that any treatment for a covered mental injury would necessarily address the vocational or physical disability caused by the mental injury, even if the primary purpose of the treatment is to treat the underlying mental condition.
“Because the language in § 25-5-57(a)(4)d. is unique to Alabama law, a review of the law of other jurisdictions would not be particularly helpful in deciding the issue before us. However, it appears that no other state appellate court has expressly considered whether a refusal to undergo psychiatric or psychological treatment amounts to a refusal of physical or vocational rehabilitation. In analogous cases, this court has recognized that a refusal to stop smoking and a refusal to lose weight that impedes an employee’s recovery from a physical injury may be considered a refusal of ‘medical service or physical rehabilitation’ under § 25-5-77(b). See Mike Makemson Logging Co. v. Colburn, 600 So.2d 1049 (Ala.Civ.App.1992), and Fort James Operating Co. v. Kirklewski, 893 So.2d 434 (Ala.Civ.App.2004). Those cases support the expansive view that a refusal of mental-health treatment that could lessen an employee’s physical disability and decrease the employee’s loss of earning capacity should be considered a refusal of ‘physical or vocational rehabilitation’ under § 25-5-57(a)(4)d.”
Saad’s Healthcare Servs, Inc. v. Meinhardt, 19 So.3d 847, 858-60 (Ala.Civ.App.2007) (Moore, J., concurring in part and dissenting in part). Although I agree with Judge Moore’s analysis, the focus of my analysis goes beyond focusing solely on legislative purpose or on the phrase “physical and vocational rehabilitation” and, instead, looks at that phrase in the context of the rest of § 25-5-57(a)(4)d.
This Court has stressed the importance in construing a statute of not viewing the words of the statute in isolation, but considering them in context:
“ ‘[0]ur rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala.1993).’
“Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala.1999).
“ ‘ “When interpreting a statute, [a court] must read the statute as a whole because statutory language depends on context; [a court] will presume that the Legislature knew the meaning of words it used when it enacted the statute.” ’
“Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003)(quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)).”
State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 813-14 (Ala.2005).
Section 25-5-57(a)(4)d., Ala.Code 1975, provides:
“Definition [of permanent total disability]. The total and permanent loss of the sight of both eyes or the loss of both arms at the shoulder or any physical injury or mental impairment resulting from an accident, which injury or im *878 pairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment, shall constitute prima facie evidence of permanent total disability but shall not constitute the sole basis on which an award of permanent total disability may be based. Any employee whose disability results from an injury or impairment and who shall have refused to undergo physical or vocational rehabilitation or to accept reasonable accommodation shall not be deemed permanently and totally disabled.”
(Emphasis added.)

Impairment

Section 25-5-57(a)(4)d. initially refers separately to “physical injury” or “mental impairment”[5] in the first sentence and then shortens those phrases to simply “injury or impairment” in the next clause of the same sentence. The use of the word “which” at the beginning of the next clause makes it clear that the phrase “injury or impairment” refers back to the phrase “physical injury or mental impairment” in the preceding clause. In the following sentence, the shortened phrase “injury or impairment” is repeated before the phrase “physical or vocational rehabilitation.”[6] Because the word “impairment” refers back to the phrase “mental impairment,” then “vocational rehabilitation” for an “impairment” must include psychiatric services or psychological counseling. If the legislature had wanted to exclude psychiatric services or psychological counseling, it could have just said “injury” and omitted the word “impairment” before the phrase “physical and vocational rehabilitation.”

Injury

Another method of statutory interpretation that leads to the same result is to focus on the word “injury” in the context of the entire chapter.[7] Section 25-5-1(9) defines “injury” to include mental injury:
“(9) INJURY. ‘Injury and personal injury’ shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except for an occupational disease or where it results naturally and unavoidably from the accident. Injury shall include physical injury caused either by carpal tunnel syndrome disorder or by other cumulative trauma disorder if either disorder arises out of and in the course of the employment, and breakage or damage to eyeglasses, hearing aids, dentures, or other prosthetic devices which function as part of the body, when injury to them is incidental to an on-the-job injury to the body. Injury does not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him or her and not directed against him or her as an employee or because of his or her employment. Injury does not include a mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body.”
(Emphasis added.) The only mention of “mental” is in the last sentence, where it *879 refers to what kind of mental injuries are not compensable. The converse of this negative reference is that mental injuries that have been produced and proximately caused by some physical injury to the body are compensable. See Fruehauf Corp. v. Prater, 360 So.2d 999, 1001 (Ala.Civ.App.1978); Allen v. Diversified Prods., 453 So.2d 1063, 1065 (Ala.Civ.App.1984). See also 3 Lex K. Larson, Larson’s Worker’s Compensation Law § 56.03[1] (2008) (“[Wjhen there has been a physical accident or trauma, and claimant’s disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable.”).
Therefore, because the word “injury” can include a mental as well as a physical injury, the word “injury” used in § 25-5-57(a)(4)d. before “physical or vocational rehabilitation” means that “vocational rehabilitation” must include psychiatric services and psychological counseling for mental injuries that have been produced and proximately caused by some physical injury to the body.

Conclusion

I believe that construing the phrases “injury or impairment” and “physical and vocational rehabilitation” in the last sentence of § 25-5-57(a)(4)d. (“Any employee whose disability results from an injury or impairment and who shall have refused to undergo physical or vocational rehabilitation or to accept reasonable accommodation shall not be deemed permanently and totally disabled.”) in the context of the entire subsection leads to the conclusion that “physical or vocational rehabilitation” includes psychiatric services or psychological counseling for mental impairment. The same result is derived from construing the word “injury” preceding the phrase “physical and vocational rehabilitation” in § 25-5-57(a)(4)d. in the context of the definitions used within the Workers’ Compensation Act to include mental injuries. Accordingly, I would reverse the judgment of the Court of Civil Appeals. I therefore respectfully dissent.

.The phrase "menial impairment” used in § 25-5-57(a)(4)d. is distinct from the phrase "physical impairment” used in the first paragraph of § 25-5-57(a)(3)i. and the phrase "vocational impairment” used in the last paragraph of § 25-5-57(a)(3)i.

. At oral argument, Meinhardt's counsel agreed that the phrase "injury or impairment” referred back to "physical injury or mental impairment."

. Chapter 5 of Title 25 of the Code of Alabama 1975 is referred to as Alabama's Workers' Compensation Act.